Bruce Edward LEAKS *v.* STATE of Arkansas

CR 99-624                                    5 S.W.3d 448

Supreme Court of Arkansas
Opinion delivered December 2, 1999

*Jim Pedigo*, Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. **[1]** The appellant, Bruce Edward Leaks, was convicted in a jury trial of first-degree murder and was sentenced to forty years in the Arkansas Department of Correction. On appeal to the Arkansas Court of Appeals, Mr. Leaks raised two assignments of error. First, he argued that the trial court abused its discretion in limiting his cross-examination of a State's witness. Second, he argued that the trial court erred in allowing the prosecutor to argue to the jury that he could have been charged with capital murder. The court of appeals, by a tie vote, affirmed *en banc. Leaks v. State*, 66 Ark. App. 254, 990 S.W.2d 564 (1999). We granted Mr. Leaks's petition for review because of the tie vote. *See* Ark. Sup. Ct. R. 2-4(c)(i). It is well settled that upon a petition for review, we consider the case as though it were originally filed in this court. *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998); *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998).

On the night of January 7, 1997, William Earl Littlejohn was shot and killed at the home of Mr. Leaks's brother, where Mr. Littlejohn had been living for about one week prior to the shooting. Before that, he and Mr. Leaks had lived together at Mr. Leaks's residence for about six months. On the evening of the shooting, Mr. Leaks went over to his brother's house to confront Mr. Littlejohn about allowing certain women to do their laundry at his brother's home, and to demand payment of money for rent and a telephone bill that Mr. Littlejohn allegedly owed him. Mr. Leaks testified that he took a gun along to confront the victim because he was fearful of Mr. Littlejohn. According to Mr. Leaks, the victim had previously cut him with a razor blade. Mr. Leaks also admitted that he and several other people had been drinking together earlier that day. Mr. Leaks testified that when he confronted Mr. Littlejohn, the victim grabbed his hand, slapped him in the face, and then came toward him and appeared to be trying to get something out of his pocket. Mr. Leaks became fearful, reached in his own pocket, pulled out the .38 caliber handgun, and then shot Mr. Littlejohn in the chest. Mr. Leaks immediately left the house after the shooting.

Mr. Leaks's nephew, who was in the back bedroom, testified that the victim came into his bedroom and told him that Mr. Leaks had shot him. Mr. Littlejohn then collapsed on the bed and died. Although Mr. Leaks initially denied any knowledge of the shooting to the police, he later admitted that he shot the victim after the police recovered the gun used in the shooting from a car owned by Mr. Leaks's girlfriend. Mr. Leaks, however, testified that he shot the victim because he feared for his life and did not intend to kill him. The jury was given instructions on the elements of first and second-degree murder.

For his first point on appeal, Mr. Leaks argues that the trial court erred in limiting his cross-examination of a State's witness, Bennie Smith, about her relationship with another State's witness, George Cheatham. Ms. Smith testified that she had been given permission by the victim to do laundry at the house on the night of the shooting, but had left prior to Mr. Leaks's arrival. She also testified that at one time she had heard Mr. Leaks say that his girlfriend had cut him. Ms. Smith had also testified on direct examination that she had dated Mr. Cheatham, who was Mr. Leaks's roommate at the time of the murder.

On cross-examination, Ms. Smith stated that "I guess I have a problem with George Cheatham." When Mr. Leaks's counsel asked her what the problem was, the State objected based on relevancy. Mr. Leaks's counsel argued that the question went to Ms. Smith's credibility, at which point the trial court sustained the State's objection.

Mr. Leaks contends that the trial court abused its discretion in not allowing a complete cross-examination of Ms. Smith, thereby denying the jurors potentially vital information regarding her credibility and potential bias. However, we are precluded from addressing the merits of this issue because Mr. Leaks failed to proffer the excluded testimony.

To challenge a ruling excluding evidence, an appellant must proffer the excluded evidence so we can review the decision, unless the substance of the evidence is apparent from the context. Ark. R. Evid. 103(a)(2); *Tauber v. State*, 324 Ark. 47, 919 S.W.2d 196 (1996); *Davis v. State*, 319 Ark. 460, 892 S.W.2d 472 (1995). In the instant case, Mr. Leaks made no proffer of what Ms. Smith's

excluded testimony would have been, and we cannot tell what the specifics of that testimony would have been from the context of the questions. Furthermore, absent a proffer of the excluded evidence, we have no way of knowing whether Mr. Leaks was prejudiced by the challenged ruling. *Tauber, supra.* Accordingly, this argument is not preserved for our review.

For his second point on appeal, Mr. Leaks argues that the trial court erred in overruling his objection to certain remarks made by the prosecutor during closing argument. This assignment of error arises out of the following argument and objection that occurred during the prosecutor's closing argument:

> PROSECUTOR: You know, Mr. Littlejohn or Mr. Leaks, He's a lucky man. He's already been given a break when he wasn't charged with the premeditated killing of Mr. Littlejohn. If you kill someone with a premeditated and deliberate purpose of doing so, if you think about it and plan on it and deliberate on it, that's one of the differences between murder in the first degree and capital murder. But, the decision was made right or wrong not to charge him with capital murder and not to seek the death penalty. We charged him with murder in the first degree. So, he's, he's already been given a break in that regard.

> DEFENSE COUNSEL: I'm going to have to object to that line of argument. He's arguing that this is a capital murder case and through the good graces of the Prosecuting Attorney's Office, they have not charged him with that, that's highly improper.

> PROSECUTOR: Judge, he was arguing and representing in his opening comments that the Defendant ought to be charged or convicted of something lesser than what he's charged with, that he ought to be convicted of murder in the second degree. He's asking the jury or representing to the jury that they ought to give him a break. I'm telling the jury now after the evidence has been presented why the evidence justifies not giving him any more breaks.

> THE COURT: Objection overruled.

After, the jury retired to the jury room to deliberate, Mr. Leaks's attorney made a motion for a mistrial based on the prosecutor's remarks. The prosecutor responded that the motion was untimely, and the trial court denied the motion for mistrial without

further comment.[1]

Mr. Leaks contends that it was improper for the prosecutor to include matters in his closing argument that were outside the charges and the evidence in this case. In response, the State asserts that we are precluded from addressing this argument on appeal, because Mr. Leaks failed to request any further relief after his objection was overruled by the trial court. Thus, we must first determine whether the argument was preserved for our review.

■ The State cites *Puckett v. State*, 324 Ark. 81, 918 S.W.2d 707 (1996) in support of its argument that Mr. Leaks was required to request relief in the form of an admonishment or a motion for mistrial. Our holding in *Puckett*, however, is inapposite. In that case, the trial court gave a limiting instruction to the jury after the defendant objected to the prosecutor's closing argument. Under such circumstances, we have consistently held that there was no abuse of discretion by the trial court when the defendant failed to request any further relief after the trial court gave a limiting instruction to the jury. *See Puckett v. State, supra; Jordan v. State*, 323 Ark. 628, 917 S.W.2d 164 (1996); *Littlepage v. State*, 314 Ark. 361, 863 S.W.2d 276 (1993); *Carmichael v. State*, 296 Ark. 479, 757 S.W.2d 944 (1988). In other words, where the trial court has afforded some relief, it is incumbent on the defendant to ask for further relief in order to preserve the issue.

In contrast, the defendant's objection to the prosecutor's closing argument in this case was overruled by the trial court. Although not cited by the State in its brief, we addressed a similar situation in *Smith v. State*, 302 Ark. 459, 790 S.W.2d 435 (1990), where the prosecutor suggested in closing argument that "the defendant has subpoena power just like the State does. If they wanted those people here they could have subpoenaed them. They did not do so." *Id.* The defendant in *Smith, supra*, objected to the prosecutor's statement on the basis that a defendant does not have to prove his innocence. After the trial court overruled the objection, the

---

[1] Mr. Leaks' motion for mistrial was untimely. A motion for mistrial must be made at the time the objectionable statement is made, rather than waiting until the end of the State's argument. *Smith v. State*, 330 Ark. 50, 953 S.W.2d 870 (1997). Furthermore, a motion for mistrial based on improper argument is untimely when it is made after closing arguments and out of the presence of the jury. *Butler Mfg. Co. v. Hughes*, 292 Ark. 198, 729 S.W.2d 142 (1987).

defendant made no further motion for relief, either in the form of a request for a mistrial, a striking of the statement, or a limiting instruction. *Id.* We then made the following holding: "In the absence of a proper request for, and a denial of, specific relief sought by the appellant, we decline to hold that the ruling of the trial court to the appellant's general objection was reversible error." *Id.* (citing *Jurney v. State,* 298 Ark. 91, 766 S.W.2d 61 (1989).

This holding in *Smith v. State, supra,* seems to suggest that even though the trial court has overruled an objection to the prosecutor's closing arguments, the defendant must still request further relief in order to preserve the issue for appellate review. We relied upon *Jurney v. State, supra,* as authority for that holding. However, a reading of *Jurney* indicates that the circumstances in that case are not similar to those presented in *Smith*:

> Finally, the appellant argues that the victim should not have been allowed to testify about his prior violent acts. When asked if this was the first time the appellant had been violent to her and her husband, the victim said no, he had pulled a knife on her before and hurt her father several times. *An objection was sustained.*
>
> When asked why she left town shortly after the incident, the victim replied that she feared her son would get out of jail and hurt her and her husband. *Again, the objection was sustained.*
>
> *The appellant got the relief requested. Since he did not ask for either an admonition or a mistrial, we find no error. Daniels v. State,* 293 Ark. 422, 739 S.W.2d 135 (1987).

*Jurney v. State, supra.* (Emphasis added.) Simply stated, the objection was sustained in *Jurney,* while in *Smith* it was overruled.

■ When an objection to a statement during closing argument is sustained, an appellant has been given all the relief requested; consequently, there is no basis to raise the issue on appeal unless the appellant requests an admonition to the jury or a mistrial. *Jurney v. State, supra; Brown v. State,* 316 Ark. 729, 875 S.W.2d 828 (1994); *Logan v. State,* 300 Ark. 35, 776 S.W.2d 341 (1989); *Mitchell v. State,* 281 Ark. 112, 661 S.W.2d 390 (1983). Whereas, when an objection to the prosecutor's closing argument is overruled by the trial court, an appellant has been given none of the relief requested. Rather, the trial court has ruled that no misconduct has occurred. To require a request for further relief at that point in order to

preserve the issue for review would serve no purpose. Once the trial court rejects a claim of improper argument, there is no reason for it to consider a request for further relief.

■ For these reasons, we must conclude that the steps required for preservation of error when a trial court sustains an objection to closing argument should not govern the preservation of error when a trial court overrules a similar objection. Thus, the citation to *Jurney v. State, supra,* does not support the purported holding in *Smith v. State, supra.* Moreover, the absence of a request for further relief has not precluded this court from addressing the merits of similar arguments in other cases where an objection to closing argument has been overruled by the trial court. *Gates v. State,* 338 Ark. 530, 2 S.W.3d 40 (1999); *Mills v. State,* 322 Ark. 647, 910 S.W.2d 682 (1995); *Bowen v. State,* 322 Ark. 483, 911 S.W.2d 555 (1995); *Catlett v. State,* 321 Ark. 1, 900 S.W.2d 523 (1995); *Goins v. State,* 318 Ark. 689, 890 S.W.2d 602 (1995); *Brown v. State,* 316 Ark. 724, 875 S.W.2d 828 (1994); *Jones v. State,* 277 Ark. 345, 641 S.W.2d 717 (1982).

■ We, therefore, hold that an objection to remarks made during closing argument is sufficient to preserve the argument for review when the objection is clearly overruled by the trial court. Any suggestion to the contrary in *Smith, supra,* is not supported by our case law. We further hold that the closing argument issue presented in this case has been preserved for our review. Mr. Leaks promptly objected to the prosecutor's closing argument, and the trial court overruled his objection. We now address the merits of Mr. Leaks's second point on appeal.

■ We have stated many times that the trial court is given broad discretion to control counsel in closing arguments, and we do not interfere with that discretion absent a manifest abuse of discretion. *Noel v. State,* 331 Ark. 79, 960 S.W.2d 439 (1998); *Lee v. State,* 326 Ark. 529, 932 S.W.2d 756 (1996). Closing remarks that require reversal are rare and require an appeal to the jurors' passions. *Lee v. State, supra; Mills v. State, supra.* Furthermore, the trial court is in the best position to evaluate the potential for prejudice based on the prosecutor's remarks. *Noel v. State, supra; Bullock v. State,* 317 Ark 204, 876 S.W.2d 579 (1994); *Sheridan v. State,* 313 Ark. 23, 852 S.W.2d 772 (1993).

We have also repeatedly stated the rule that closing arguments must be confined to questions in issue, the evidence introduced during trial, and all reasonable inferences and deductions which can be drawn therefrom. *Woodruff v. State*, 313 Ark. 585, 856 S.W.2d 299 (1993); *Mays v. State*, 303 Ark. 505, 798 S.W.2d 75 (1990). It is the trial court's duty to maintain control of the trial and to prohibit counsel from making improper arguments. *Peebles v. State*, 305 Ark. 338, 808 S.W.2d 331 (1991) (citing *Walker v. State*, 138 Ark. 517, 212 S.W. 319 (1919)).

In this case, Mr. Leaks challenges the propriety of the prosecutor telling the jury during closing argument that Mr. Leaks had already been given a break by the State's decision to charge him with first-degree murder instead of capital murder. As previously mentioned, Mr. Leaks argues that the prosecutor's reference to capital murder was improper because it was outside the charges and evidence in this case. We agree.

We have previously dealt with the propriety of a prosecutor's reference in closing argument to an offense that is outside of the record. For example, in *Simmons & Flippo v. State*, 233 Ark. 616, 346 S.W.2d 197 (1961), the prosecutor told the jury that the defendant had previously raped a girl other than the prosecutrix. Because there was "no evidence in the record which provides, under any logical analysis, a foundation for the prosecuting attorney's statement to the jury," we held that the prosecutor's highly improper and prejudicial closing argument warranted reversal of the conviction. *Id.* Similarly, in *Miller v. State*, 120 Ark. 492, 179 S.W. 1001 (1915), the prosecutor implied in the closing argument that the defendant, who was charged with theft of a horse, was also guilty of insurance fraud. In reversing the conviction, we concluded that the trial court erred in sanctioning this improper and prejudicial argument. *Id.* Likewise, in *Todd v. State*, 202 Ark. 287, 150 S.W. 46 (1941), the prosecutor told the jury not to worry about the defendant having to work out a fine on the county farm because she would "sell enough whisky to pay off the fine." *Id.* This court, in reversing the conviction, held that the prosecutor's remarks were highly improper and prejudicial because the charge of assault and battery against the defendant did not involve the sale of liquor. *Id.*

We noted in *Simmons & Flippo v. State*, *supra*, that many of the policies which underlie the rules prohibiting the introduction of

evidence of other offenses also apply with equal force to the problem of a prosecutor's reference to an offense not supported by the record:

> Basically, the rule rests upon the spirit of fair play which, perhaps more than anything else, distinguishes Anglo-American law from the jurisprudence of other nations. Our theory is simply that a finding of guilty should rest upon proof, beyond a reasonable doubt, that *the accused committed the exact offense for which he is being tried. . . . Much of the fundamental protection thus afforded the accused would be rendered ineffective if the prosecuting attorney were allowed to place before the jury indirectly by argument that which could not be introduced as evidence.*

*Id.* (citations omitted; emphasis added). In this case, the exact offense for which Mr. Leaks was being tried was first-degree murder. Whether or not the evidence supported a charge of capital murder was not at issue.

We also observed in *Simmons & Flippo v. State, supra,* that the prosecutor acts in a quasi judicial capacity and that it is the prosecutor's duty to use all fair, honorable, reasonable, and lawful means to secure the conviction of the guilty in a fair and impartial trial:

> Nothing should tempt him to appeal to prejudices, to pervert the testimony, or make statements to the jury which, whether true or not, have not been proved. The desire for success should never induce him to endeavor to obtain a verdict by arguments based on anything except the evidence in the case and *the conclusions legitimately deducible from the law applicable to the same.* To convict and punish a person through the influence of prejudice and caprice is as pernicious in its consequences as the escape of a guilty man. The forms of law should never be prostituted to such a purpose.

*Id.* (citing *Holder v. State,* 58 Ark. 473 (1894); emphasis added.) The only law applicable to the evidence in this case was that which related to the charge of first-degree murder and to the lesser-included offense of second-degree murder. Thus, the element of premeditation that relates solely to capital murder was not applicable to the evidence in Mr. Leaks's case.

In a case involving an argument that closely parallels the one made by the prosecutor in this case, the Tennessee Supreme Court reversed the appellant's conviction for assault with intent to kill and

remanded the case for new trial because the prosecutor suggested that the appellant intended to rape the victim, when the case was prosecuted on the theory that his purpose was to commit a robbery. *Vines v. State*, 231 S.W.2d 332 (Tenn. 1950). The trial court allowed the argument over the appellant's objection. *Id.* In reversing, the Tennessee Supreme Court stated:

> We think the foregoing argument by the State's counsel justifies a reversal of this case. The defendant was not on trial for attempted rape. On the contrary, the State had put him on trial upon an indictment charging an assault to commit murder, the theory being that his purpose was robbery. The State's counsel clearly asked the jury to give consideration to the theory of attempted rape, and not robbery, referring to the defendant as "this human fiend . . . ." The court should have admonished counsel that he had no way to argue a theory that was wholly foreign to the indictment in order to secure a conviction, and that the language used was highly improper. While it is the duty of the State's counsel to prosecute all offenders with the utmost vigor, he is never driven to the necessity of indulging in such intemperate language to influence the jury's decision.

*Id.* (citation omitted). Likewise, other jurisdictions have held that similar arguments made by the defense are improper. In *State v. Dickson*, 691 S.W.2d 334 (Mo. App. 1985), the Missouri Court of Appeals, in affirming a conviction for capital murder, held that the trial court properly sustained the State's objection to appellant's closing arguments. After the State suggested in its closing that the appellant had a "sexual purpose" in the attack on the victim, appellant's counsel attempted to argue that the killing was a felony murder rather than capital murder. *Id.* However, the jury was instructed only on capital murder, murder in the second degree, and manslaughter. *Id.* The court stated:

> It is thus evident that if appellant's lawyer, at the time of the prosecutor's objection was intending to argue to the jury that a killing during an attempted rape would constitute "felony-murder," such an argument would have been outside of the instruction. While counsel may argue facts as they pertain to the law declared in the instructions of the court, it is improper for counsel to argue questions of law not within the issues or inconsistent with the instructions of the court, or to present false issues. Whether appellant, on the evidence before the jury, was guilty of "felony-murder" was not an issue for the jury to decide.

*Id.* (citations omitted). *See also United States v. Quinn*, 467 F. 2d 624 (8th Cir. 1972) (trial court upheld in prohibiting defense counsel from arguing that he should have been charged with another crime rather than the crime with which he was charged).

Here, the prosecutor clearly went beyond the charges and the evidence in this case when he argued to the jury that Mr. Leaks had been given a break because he was not charged with capital murder. We, therefore, hold that the prosecutor's remarks were highly improper and the trial court clearly abused its discretion in failing to sustain Mr. Leaks's objection on that ground.

The State argues that Mr. Leaks was not prejudiced by the prosecutor's improper remarks because, as an habitual offender, he did not receive the maximum sentence for first-degree murder, and because the trial court instructed the jury that comments by counsel were not evidence. We disagree.

A trial court's failure to sustain a proper objection to argument of matters outside the record is serious error and gives the appearance that the improper argument has not only the sanction but the endorsement of the court. *Williams v. State*, 294 Ark. 345, 742 S.W.2d 932 (1988) (citing *Williams v. State*, 259 Ark. 667, 535 S.W.2d 842 (1976)). We have also stated that we will always reverse a case where counsel goes beyond the record to state matters that are prejudicial to the opposing party unless the trial court, by its ruling, has removed the prejudice. *Id.*

The jury in this case was instructed by the trial court on the elements of first-degree murder and second-degree murder. They were also advised by the prosecutor, with the tacit approval of the trial court, that the evidence could have supported a charge of capital murder with a maximum penalty of death. The prejudicial effect of the prosecutor's remarks concerning the applicable law would not have been removed by the trial court's instruction that counsel's arguments were not evidence. That same jury instruction informs the jury that arguments by counsel are made only to help them understand "the evidence and *applicable law*." AMCI 2d 101(e). (Emphasis added.) Mr. Leaks did not receive the maximum sentence for first-degree murder. However, the forty-year sentence imposed by the jury did exceed by ten years the maximum he could have received for second-degree murder, as an habitual offender.

Ark. Code Ann. § 5-4-501(a) (Repl. 1997). Under these circumstances, we cannot say that Mr. Leaks was not prejudiced by the prosecutor's highly improper remarks.

Finally, we have carefully considered the record in an effort to determine whether the trial court's error was harmless due to overwhelming evidence of guilt. While the evidence of Mr. Leaks's guilt may have been overwhelming, the question at issue in this case was whether he was guilty of first-degree murder or the lesser-included offense of second-degree murder. Mr. Leaks was entitled to a fair deliberation by the jury on those two offenses. Based on this record, we cannot say that the prosecutor's improper suggestion of a third and more serious charge, capital murder, did not result in jury deliberations that included not only the charged offense of first-degree murder and the lesser-included offense of second-degree murder, but also a third uncharged offense of capital murder, thereby causing the deliberations to be skewed in favor of first-degree murder. We, therefore, hold that the trial court's error in failing to sustain Mr. Leaks's objection to the prosecutor's highly improper remarks was not harmless. For these reasons, the judgment of the trial court is reversed and the case remanded for a new trial.

Reversed and remanded.