Levester GILLARD *v.* STATE of Arkansas

CR 05-916                                                    234 S.W.3d 310

Supreme Court of Arkansas
Opinion delivered April 27, 2006

*John F. Stroud, III*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.

R OBERT L. BROWN, Justice. Appellant Levester Gillard appeals from his judgment of conviction for rape. He was sentenced to life imprisonment as a habitual offender. His sole point on appeal is that the circuit court erred in denying his motion for directed verdict at trial due to lack of sufficient evidence. We affirm the judgment of conviction.

The facts, according to the testimony at trial, are these. On May 1, 2004, the female victim, J.H., who was thirteen at the time, was babysitting for some friends at the Linwood Apartments in Texarkana. The parents of the children returned to the apartment around 2:00 a.m., and J.H. called her mother to come pick her up. When her mother arrived, she gave J.H. her cell phone and told her to go down and wait in the car for her. While waiting in the car and about to call her boyfriend on the cell phone, a man approached her car. It was the same man whom she had seen at the door of the apartment next to the one she was leaving before she went down to her mother's car. The man, whom she later identified as Gillard, put a gun to her head and told her not to make him pull the trigger. He then forced her out of the car, and he walked her to his truck. He put her in the passenger side of the truck, looked around, and closed the door. J.H. noticed that he had some beads hanging from the rearview mirror of his truck.

After driving for approximately thirty or forty-five minutes, Gillard pulled the truck off onto a dirt road. He next told her to take her clothes off. He crawled over the console, got down on the floor board, and put J.H.'s feet up on the dash board and forced her to have sexual intercourse. Following that, he drove her away from the area, and while driving, forced her to perform oral sex on him. Eventually, they stopped again, and Gillard told J.H., "[L]et's do it again." This time, Gillard laid the seats of his truck all the way back, made her get on top of him, and forced her to have sexual intercourse. He also made her bend over the seat, and he had anal sex with her. J.H. started screaming and told him to stop, which he did, but he later made her lean over his lap and perform oral sex on him again.

Gillard again began driving, while forcing J.H. to perform oral sex. She felt sick and laid her head down on the console for awhile, and he made her perform oral sex again. Eventually, they arrived at a residence, which was later determined to be that of

Gillard's friend, Roy Watkins. Gillard got out of the truck, walked to the passenger's side, got J.H. out of the car, covered her face, and took her into the house. He unlocked the door with a key, and they went in. Without turning any lights on, Gillard asked J.H. whether she could see the bed. When she said "yes," he told her to "go get on it." He got a condom from a bag in a dresser drawer, took off his clothes, put her legs and arms around him, and made her have sexual intercourse with him. Afterwards he took her into the bathroom, where he gave her water to drink and asked her to urinate. She did not, and he gave her a rag with vinegar on it and told her to wash her body down. Despite that instruction, it was he who washed her body "from head to toe." Following that, he gave her some clothes to put on, which were not hers, and gave her her own flip flops, after he had washed them down with vinegar, too. He then retrieved her clothes from the bedroom, covered her eyes, and took her back outside to the truck.

In the truck, Gillard told J.H. that he would kill her if she told anyone about this and that, if he could not, he would find somebody who could. He also told J.H. that he knew where she lived, where her mother lived, where her mother worked, where she went to school, and when the last day of school was. He told her that he had been watching her for the past three weeks.

After they began driving, J.H. vomited in the truck. Soon after that, Gillard stopped the truck on the side of the road and told J.H., "This is where you get out." He did not give her her clothes or purse back, but he did give her her cell phone. J.H. called her father, who was away, and his girlfriend told her to call 911. She did, and the 911 operator instructed her to go to the nearest street sign, which J.H. did, and she determined she was on Social Hill Road. From there, J.H. went to a nearby trailer where a woman helped her until police officers arrived. They took her to the hospital, where a rape kit was performed. J.H. later identified Gillard from a photograph lineup, even pushing his picture away when she saw it because she was afraid. She also identified Gillard in open court at his trial.

During their investigation of Gillard, police officers learned of Roy Watkins's house and conducted a search of it after obtaining Mr. Watkins's consent. The layout of the house matched the description that J.H. had given the police officers. In addition, officers found a bag of condoms in the dresser drawer, just as J.H. had described. Mr. Watkins told police officers that Gillard had a key to his house and that they had an arrangement where he could

come and go as he pleased. Police officers also recovered a bottle of vinegar from the home, which Mr. Watkins said he had found in his bathroom sink. While walking through Mr. Watkins's home with police officers, J.H. recognized a shell night light and a heater in the bathroom that she said he had brought in for her and recognized the mirrored headboard on the bed. She told the police officers that she was one hundred percent sure Mr. Watkins's home was the house that she was in that night. Police officers also discovered a Wal-Mart shopping bag in the back of Gillard's wife's Jeep Cherokee, which contained a red tobaggan cap. J.H. had told police officers that Gillard was wearing a red tobaggan cap when she first saw him.

In addition, microscopically-similar fibers from the shorts J.H. had worn that night were found on the center console of Gillard's truck, and microscopically-similar fibers from the seat in Gillard's truck were found on her t-shirt. DNA tests further revealed that Gillard could not be excluded as the source of semen that was retrieved from a vaginal swab, while 99.99 percent of the remainder of black individuals could be. A search of Gillard's truck after it was seized also revealed beads hanging from the rear view mirror.

Gillard was later arrested in Decatur, Alabama. While waiting with the arresting officer at the Decatur city jail, Gillard told him, "I knew you-all would be coming." After the officer commented that most people are glad to quit looking over their shoulder, Gillard further said, according to the police officer:[1]

> What happened was about three months ago I went to the club and mixed up a lot of different pills. I was out of it for about four hours. I don't know what happened. Apparently some girl got raped in my truck. Later on the detectives came to my house and asked to search my truck. I told them no without a search warrant. Well, they left and later on they came back to get my truck, that's when I knew this was serious. A few days later I was riding in my Cherokee when my friend called me and said he saw me on the news and they wanted me for rape and kidnapping. I thought he

---

[1] On cross-examination, during an in-chambers conference with the circuit court on Gillard's motion to suppress the statements, defense counsel brought out that Gillard had not been read his rights and was in police custody. However, the police officer further testified that he did not engage Gillard in conversation and did not ask him any questions. Gillard has not challenged the circuit court's admission of the statements on appeal.

was kidding, so I went and bought a newspaper and that's when I saw that they really were looking for him. [sic] I knew this guy in Decatur, so I came down here to hide out. The guy I was staying with didn't know anything about this. That pill that really messed me up was shaped like a pink heart.

Following a jury trial, Gillard was convicted of rape and was sentenced to life imprisonment.

Gillard's sole point on appeal is that there was insufficient evidence for the jury to convict him of rape. Specifically, he points to the fact that J.H. described her assailant as being bald and having a salt-and-pepper mustache, despite the fact that that description does not fit him. He further points to the fact that J.H.'s mother described the white truck in which she believed her daughter was kidnapped as being "jacked-up" or having a lift kit, which his did not. Also, J.H. described the truck as having a tool box on the back, which his did not, and she stated that the truck had an automatic transmission, while his has a stick shift. Based on this, he contends that the conflicting evidence cannot uphold his conviction.

In reviewing a challenge to the sufficiency of the evidence, this court assesses the evidence in a light most favorable to the State and considers only the evidence that supports the verdict. *See, e.g., Tillman v. State*, 364 Ark. 143, 217 S.W.3d 773 (2005). This court will affirm a judgment of conviction if substantial evidence exists to support it. *See id.* Substantial evidence is evidence which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *See id.*

██ Gillard moved for a directed verdict based on the lack of "credible evidence," but there was clearly substantial evidence to support Gillard's conviction for rape. With regard to a rape conviction, the testimony of a rape victim, standing by itself, constitutes sufficient evidence to support a conviction. *See, e.g., Hanlin v. State*, 356 Ark. 516, 157 S.W.3d 181 (2004). But, in addition, evidence was presented that Gillard fled the jurisdiction after he discovered that police officers were looking for him. Flight is probative evidence of guilt. *See id.* Furthermore, not only did Gillard own a white truck, but fibers from the shorts J.H. wore were microscopically similar to fibers found inside the truck, and fibers from the seat in the truck were microscopically similar to

fibers found on the t-shirt J.H. wore. Also, the layout of Roy Watkins's house was exactly as J.H. had described it to police officers, and Gillard was the only other person, other than Mr. Watkins, who had a key to the house. As a final point, DNA testing could not exclude Gillard from the sample of semen recovered from J.H.

While Gillard takes issue with certain inconsistencies in the evidence against him, inconsistencies in the testimony of a rape victim are matters of credibility for the jury to resolve. *See, e.g., Williams v. State*, 331 Ark. 263, 962 S.W.2d 329 (1998). It is within the province of the jury to accept or reject testimony as it sees fit. *See id.*

We hold that there was sufficient evidence to sustain Gillard's conviction.

A review of the record has been made pursuant to Supreme Court Rule 4-3(h) to determine whether other reversible error occurred, and none has been found.

Affirmed.