John ROHRBACH *v.* STATE of Arkansas

CR 08-132                                          287 S.W.3d 590

Supreme Court of Arkansas
Opinion delivered September 25, 2008

*Terry Goodwin Jones*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Eileen W. Harrison*, Ass't Att'y Gen., for appellee.

J IM HANNAH, Chief Justice. Appellant John Rohrbach was convicted of three counts of rape, three counts of sexual assault in the second degree, and one count of terroristic threatening in the first degree. The rape and sexual assault counts involved acts committed against his stepdaughter, M.C., and the terroristic threatening count was based on threats made to ensure M.C.'s silence. Rohrbach was sentenced as a habitual offender to the following consecutive terms: life imprisonment for each count of rape, forty-five years' imprisonment for each count of sexual assault in the second degree, and thirty-nine years' imprisonment for terroristic threatening in the first degree, for a total of three life terms plus 174 years.

For reversal, Rohrbach asserts that the circuit court (1) erred in denying his motion for directed verdict on all counts, (2) abused its discretion in allowing testimony about the previous rape and sexual abuse of his biological daughter, (3) abused its discretion in allowing the victim's mother to testify that he had threatened her

with physical violence, (4) erred in denying his motion for mistrial as a result of comments made by the prosecutor during closing argument, and (5) erred in denying his motion to set aside the verdict because it was based on inconsistent testimony and because the multiple offenses for which he was charged were based on a continuous course of conduct that should have been charged as a single offense. Because Rohrbach was sentenced to terms of life imprisonment for his rape convictions, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(a)(2) (2008). We find no error and, accordingly, we affirm.

### Motions for Directed Verdict

Rohrbach moved for a directed verdict on all counts at the end of the State's case and at the close of all evidence, claiming that the witness testimony was inconsistent and, therefore, not credible. The circuit court denied both motions. On appeal, Rohrbach asserts that his convictions are not supported by substantial evidence because the testimony of the victim and her mother was not credible.

In reviewing a challenge to the sufficiency of the evidence, this court assesses the evidence in a light most favorable to the State and considers only the evidence that supports the verdict. *See, e.g.*, *Gillard v. State*, 366 Ark. 217, 234 S.W.3d 310 (2006). This court will affirm a judgment of conviction if substantial evidence exists to support it. *See id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *See id.*

We have held that the credibility of witnesses is a matter for the jury's consideration. *Tryon v. State*, 371 Ark. 25, 263 S.W.3d 475 (2007). Where the testimony is conflicting, we do not pass upon the credibility of the witnesses and have no right to disregard the testimony of any witness after the jury has given it full credence, where it cannot be said with assurance that it was inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon. *Davenport v. State*, 373 Ark. 71, 281 S.W.3d 268 (2008). It is well settled that the testimony of a rape victim, standing alone, is sufficient to support a conviction if the testimony satisfies the statutory elements of rape. *See Small v. State*, 371 Ark. 244, 264 S.W.3d 512 (2007). Finally, we have stated that flight may be probative evidence of guilt. *See Gillard, supra.*

The jury heard the following evidence at trial. M.C., who was eight years old at the time of the trial, testified that Rohrbach had raped and sexually abused her on numerous occasions while threatening to harm her mother, brother, and sister if she told anyone about the abuse. M.C. stated that Rohrbach "licked my privates, put his thing in my butt, and tried to put his private in my front private." M.C. also testified that Rohrbach put his penis in her mouth. M.C. testified that, at times, Rohrbach used strawberry and banana flavored condoms when he forced her to perform oral sex on him. M.C. further related that she had masturbated Rohrbach with her hand and that when she did, something yellow and whitish came out of his penis. M.C. testified that she did not tell anyone about the abuse for quite some time because Rohrbach told her "he would kill Mommy, Bubba, and Sissy if I told."

In addition to M.C.'s testimony, the jury heard testimony from M.C.'s mother, Heather Craft. Craft testified that Rohrbach told her that he had "licked on [M.C.]'s privates and that she liked it." Craft also said that on the evening of Friday, February 23, 2007, Rohrbach forced her to stay in the bathroom while he took M.C. to the bedroom, from where Craft heard M.C. say three or four times that "it hurt." A few minutes passed and then, according to Craft, M.C. and Rohrbach came into the bathroom where Craft was taking a bath. Craft stated that M.C. was naked and that Rohrbach was wearing only an open robe. M.C. got into the bathtub with her mother, and Rohrbach, who according to Craft was aroused, told M.C. "to wash her kitty cat real good." Craft stated that Rohrbach also told M.C. that he would not hurt her and that "they would try the other later."

Finally, Craft also stated that she had heard Rohrbach demand sexual favors from M.C. Craft testified that on the morning of Monday, February 26, 2007, Rohrbach approached M.C. with a flavored condom in his hand and told her there was something he wanted her to do. Craft said that Rohrbach was aroused at the time and had pulled his pants down around his knees. Craft stated that Rohrbach told M.C. he wanted her "to do for him what [s]he had done for Chris" and "that she had promised that she would."[1] M.C. told Rohrbach that she did not feel like it

---

[1] Chris Rohrbach, the appellant's stepson, was also alleged to have sexually molested M.C. According to the State, at the time of the appellant's trial, Chris Rohrbach was in jail awaiting trial on charges that he had sexually abused M.C.

because her stomach hurt. Craft said that Rohrbach got upset, told M.C. that it was okay, and threw the condom on the floor.

Randolph County Sheriff's Deputy Willie Kimble testified that on February 26, 2007, he was notified that there were allegations that Rohrbach had sexually assaulted M.C. Deputy Kimble went to the Rohrbach residence to speak with Rohrbach, who was not there. Having received permission from Craft to look around the residence, Deputy Kimble searched the residence and found an opened condom packet, with the condom still inside, in the trash can. Deputy Kimble also testified that Rohrbach fled the state shortly after M.C. and Craft reported the abuse to the police. According to Deputy Kimble, Rohrbach eluded the police for four months and was finally located in Poplar Bluff, Missouri.

The State also presented testimony from Rohrbach's twenty-nine-year-old biological daughter, T.Y., who stated that Rohrbach had sexually abused her when she was between the ages of five and eleven. She testified that Rohrbach fondled her vaginal area, forced her to perform oral sex on him, vaginally raped her, and attempted to rape her anally. T.Y. testified that Rohrbach repeatedly told her that he would kill her, her grandparents, and her aunt and uncle who were raising her if she told anyone about the abuse.

■ Here, Rohrbach does not challenge the State's proof on any of the elements of the offenses charged against him, but instead argues that the testimony of M.C. and Craft was not credible because prior to this trial, both had made similar accusations against Craft's father that were found to be unsubstantiated. The record reveals that the jury heard testimony concerning the previous allegations of abuse. Craft admitted at trial that she had previously lied when she had alleged that her father had sexually abused M.C. in 2002, explaining that she was angry and trying to separate her mother and father.[2] It was for the jury to determine whether Craft was being truthful when she testified about Rohrbach's sexual abuse of M.C. Here, the jury clearly found credible testimony concerning both Rohrbach's abuse of M.C. and his threats to ensure M.C.'s silence. In addition, Rohrbach's flight after the allegations provided further proof of his guilt. We hold

---

[2] For her part, M.C., who was three years old in 2002, testified that she did not remember any allegations about her grandfather.

that there is substantial evidence to support the jury's verdict. The circuit court did not err in denying Rohrbach's motions for directed verdict.

## Admission of Testimony

Rohrbach next argues that the circuit court erred in admitting the testimony of his biological daughter, T.Y., because her testimony was more prejudicial than probative. At trial, T.Y. testified that Rohrbach sexually abused her when she was between the ages of five and eleven and that he told her he would harm her family members if she told anyone about the abuse. The circuit court allowed T.Y. to testify about the abuse and the threats, pursuant to Arkansas Rule of Evidence 404(b) (2007).

The admission or rejection of evidence under Rule 404(b) is within the sound discretion of the circuit court, and it will not be reversed absent a manifest abuse of discretion. *Strong v. State*, 372 Ark. 404, 277 S.W.3d 159 (2008). According to Rule 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Such evidence is permissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ark. R. Evid. 404(b). This court's precedent has recognized a "pedophile exception" to this rule, whereby evidence of similar acts with the same or other children is allowed to show a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship. *Flanery v. State*, 362 Ark. 311, 208 S.W.3d 187 (2005). For the pedophile exception to apply, we require that there be a sufficient degree of similarity between the evidence to be introduced and the sexual conduct of the defendant. *White v. State*, 367 Ark. 595, 242 S.W.3d 240 (2006). There must also be an "intimate relationship" between the perpetrator and the victim of the prior act. *Id.*

T.Y.'s testimony falls under this court's pedophile exception for Rule 404(b). The conduct about which she testified was sufficiently similar to the charged conduct to warrant application of the exception. Rohrbach fondled T.Y.'s vaginal area, forced her to perform oral sex on him, vaginally raped her, and attempted to rape her anally. M.C. was forced to perform oral sex on Rohrbach, and Rohrbach performed oral sex on M.C. In addition, M.C. testified that Rohrbach anally raped her and attempted to rape her

vaginally. While T.Y. was raised by her aunt and uncle, Rohrbach lived in the same household with them. Likewise, M.C., Rohrbach's stepdaughter, lived in the same household with him. T.Y. testified that the sexual abuse began when she was five years old and continued until she reported it at age eleven. M.C., who was eight at the time of the trial, testified that the abuse had been going on for years. Finally, both T.Y. and M.C. testified that Rohrbach threatened to harm their family members if they reported the abuse. The pattern and frequency of intimidation and abuse described by T.Y. closely resembled the rape, sexual abuse, and threats described by M.C. Clearly, this evidence was helpful in showing a proclivity toward specific acts with a person or class of persons with whom Rohrbach had an intimate relationship. T.Y.'s testimony helped to prove Rohrbach's depraved sexual instinct, and the probative value of T.Y.'s testimony outweighed its prejudice. The circuit court did not abuse its discretion in allowing T.Y. to testify.

Rohrbach next asserts that the circuit court abused its discretion in allowing Craft to testify that he had threatened her with physical violence. Specifically, Rohrbach asserts that Craft's credibility is at issue because she had previously accused her father of molesting M.C. and then later admitted on the stand that she had lied about those reports of abuse. He also contends that the evidence served no purpose other than to inflame the jury.

Prior to trial, Rohrbach moved to exclude Craft's testimony concerning threats directed at her by Rohrbach a few days before she went to the police. Rohrbach asserted that the testimony was not relevant and was only intended to show that Rohrbach was a bad man. The circuit court determined that Craft's testimony was admissible, pursuant to Rule 404(b), stating that it was relevant to show Rohrbach's intent, plan, and motive. In addition, the circuit court determined that the probative value of the testimony outweighed the danger of prejudice to Rohrbach.

At trial, Craft testified that Rohrbach had coerced her to remain in the bathroom while he took M.C. to another room. Craft also stated that Rohrbach coerced her into signing typewritten statements admitting that she had engaged in sexual intercourse with numerous men, including members of her family. Craft said that she signed the statements because she was being beaten by Rohrbach. In addition, Craft stated that Rohrbach threatened to "pull all my insides out if I didn't tell him everybody I had slept with." Craft said that when Rohrbach made this threat

to her, "[h]e had his hand all the way up inside me and was pulling on the inside of me till he started making me bleed. He told me he was going to pull my insides out and let me die." She testified that she was beaten and physically abused by Rohrbach from Friday through Sunday; on Monday morning, she contacted the police.

■ The evidence of Rohrbach's threats to and assaults upon Craft immediately before she contacted police is relevant and admissible under Rule 404(b). Apart from showing that Rohrbach threatened and assaulted Craft, the evidence shows that Rohrbach was attempting to silence a witness and, thus, is independently relevant to prove the crime charged. *See Holman v. State*, 372 Ark. 2, 269 S.W.3d 815 (2007).

The State asserts that the threat of physical violence provided Rohrbach with the opportunity to molest M.C. without Craft's intervention. We agree. As for Rohrbach's contention that Craft's testimony was not credible due to her prior false accusation of sexual abuse, we again state that it is for the jury, not this court, to assess the credibility of witnesses. We hold that the circuit court did not abuse its discretion in allowing Craft to testify that Rohrbach had threatened her with physical violence.

### Comments During Closing Argument

Rohrbach contends that the circuit court erred in refusing to grant a mistrial based on remarks made by the prosecutor during closing argument. He claims that the remarks were inflammatory and that a cautionary instruction could not have cured the prejudicial effect. During the course of the trial, evidence was introduced that Craft had falsely accused her father of sexually molesting M.C. Craft and M.C. were living in the same house with Rohrbach when these accusations were made. Craft admitted that she had made false allegations against her father, but she stated that the allegations arose when she discovered physical evidence of sexual abuse one day after M.C. returned from visiting her grandfather. During closing argument, the prosecutor made the following statement regarding the prior allegations of abuse:

> Heather [Craft] told you that Freda is the one who first noticed that [M.C.'s] little vagina was all red. Something about her hole was too big. I don't know what that means. It was, according to Heather, at least twelve hours before that came to her attention. That child was back in that home for a while. Now what can you

rationally conclude from that evidence? It's entirely possible that this defendant molested her then. It's entirely possible.

Rohrbach objected to the remarks and asked for a mistrial. The circuit court denied the motion and advised the prosecutor to move on. Rohrbach did not request a cautionary instruction to the jury.

We have stated many times that the trial court is given broad discretion to control counsel in closing arguments, and we do not interfere with that discretion absent a manifest abuse of discretion. *Leaks v. State*, 339 Ark. 348, 5 S.W.3d 448 (1999); *Noel v. State*, 331 Ark. 79, 960 S.W.2d 439 (1998); *Lee v. State*, 326 Ark. 529, 932 S.W.2d 756 (1996). Closing remarks that require reversal are rare and require an appeal to the jurors' passions. *Leaks, supra; Lee, supra.* Furthermore, the trial court is in the best position to evaluate the potential for prejudice based on the prosecutor's remarks. *Leaks, supra; Noel, supra.*

█ Closing arguments must be confined to questions in issue, the evidence introduced during trial, and all reasonable inferences and deductions which can be drawn therefrom. *Leaks, supra.* It is the trial court's duty to maintain control of the trial and to prohibit counsel from making improper arguments. *Id.*

The decision to grant or deny a motion for mistrial is within the sound discretion of the trial court and will not be overturned absent a showing of abuse or manifest prejudice to the appellant. *Johnson v. State*, 366 Ark. 8, 233 S.W.3d 123 (2006). A mistrial is a drastic remedy and should only be declared when there is error so prejudicial that justice cannot be served by continuing the trial, and when it cannot be cured by an instruction to the jury. *Tryon v. State*, 371 Ark. 25, 263 S.W.3d 475 (2007). However, among the factors we consider on appeal is whether the defendant requested a cautionary instruction or admonition to the jury, and the failure of the defense to request an admonition may negate the mistrial motion. *Barnes v. State*, 346 Ark. 91, 55 S.W.3d 271 (2001).

The State points out that the cornerstone of Rohrbach's defense was a previous allegation of abuse made by Craft against her father. Craft admitted that she lied when she told investigators that she had been abused by her father, but she testified that she suspected her father of abusing M.C. because physical evidence of abuse was discovered. To determine Craft's credibility, it was important to clarify the basis for the original allegation of sexual abuse involving M.C.

The circumstances surrounding the earlier abuse were before the jury. After hearing Craft's testimony, the jury may have believed that Rohrbach, not M.C.'s grandfather, had sexually abused M.C. when she was three years old. Therefore, we agree with the State's contention that the prosecutor's argument was based on a reasonable inference that could be drawn from the evidence presented at trial. Based upon this and based upon the fact that Rohrbach did not request a cautionary instruction to the jury, we hold that the circuit court did not abuse its discretion in denying Rohrbach's request for a mistrial.

*Motion to Set Aside the Guilty Verdict*

After being found guilty by the jury, Rohrbach moved to set aside the verdict, alleging that there was insufficient evidence in support of it. In other words, Rohrbach moved for a judgment notwithstanding the verdict (JNOV). Rohrbach now appeals the denial of the motion.

In a civil case, a party challenges the sufficiency of the evidence under Rule 50 of the Arkansas Rules of Civil Procedure by moving for a directed verdict at the conclusion of the evidence and by moving for a judgment notwithstanding a verdict after the verdict has been rendered. *See* Ark. R. Civ. P. 50(a), (b) (2007). While Rule 50 allows a party to ask that the circuit court set aside the verdict in civil cases, there is no such procedure available in criminal cases. Rather, in a criminal case, a defendant challenges the sufficiency of the evidence under Rule 33.1 of the Arkansas Rules of Criminal Procedure by moving for a directed verdict at the end of the State's case and at the conclusion of all the evidence. Rohrbach did so. We have already addressed Rohrbach's sufficiency challenges in the first point on appeal, and for the same reasons expressed there, we hold that there is substantial evidence to support the jury's verdict.

Finally, Rohrbach contends that the guilty verdict should be set aside because his conduct was a continuing violation and he should not have been charged with more than one offense. We will not address this argument because Rohrbach failed to raise it at trial. Issues not raised at trial will not be addressed for the first time on appeal. *See, e.g., Hinkston v. State*, 340 Ark. 530, 10 S.W.3d 906 (2000). An appellant is limited by the scope and nature of the

arguments and objections presented at trial and may not change the grounds for objection on appeal. *See, e.g., Tavron v. State,* 372 Ark. 229, 273 S.W.3d 501 (2008).

## 4-3(h)

Pursuant to Arkansas Supreme Court Rule 4-3(h), the record in this case has been reviewed for all objections, motions, and requests made by either party, which were decided adversely to Rohrbach, and no prejudicial error has been found.

Affirmed.

GLAZE, J., not participating.