Cite as 2024 Ark. 96

# SUPREME COURT OF ARKANSAS

**No.** CR–23–537

| | | |
|---|---|---|
| | | **Opinion Delivered:** May 30, 2024 |
| COREY JEFFERY | | |
| | APPELLANT | APPEAL FROM THE ARKANSAS COUNTY CIRCUIT COURT |
| V. | | [NO. 01SCR-18-138] |
| STATE OF ARKANSAS | | HONORABLE DONNA |
| | APPELLEE | GALLOWAY, JUDGE |
| | | AFFIRMED. |

**JOHN DAN KEMP, Chief Justice**

Appellant Corey Jeffery appeals an Arkansas County Circuit Court order convicting him of capital murder and first-degree unlawful discharge of a firearm from a vehicle and sentencing him to an aggregate term of life imprisonment plus seventy years with an enhancement of fifteen years on each count for committing a felony with a firearm. For reversal, Jeffery argues that the circuit court erred in denying his motions for directed verdict. We affirm.

## I. *Facts*

On the evening of June 8, 2016, the victim, Christopher Haynes, was found dead in his car at the Riceland Foods plant in Stuttgart where he was scheduled to work the evening shift from 11:00 p.m. to 7:00 a.m. According to Latoya Rachelle Byers, Haynes's administrative assistant, she drove through the only entrance of the Riceland Foods property and passed a green dually truck. Once inside the property, she saw Haynes's "car . . . sitting

right at the [railroad] tracks where the grain mills are." Byers stopped behind Haynes's vehicle, waited for a moment because she "thought maybe he was doing something on his phone[,]" pulled beside his car, rolled the window down, and saw that his car window was shattered. She pulled over, walked back to Haynes's car while calling his name, turned on her cell-phone light, and saw bullet holes in the bottom of the window. Byers then discovered that Haynes was in the driver's seat and had been shot. She screamed and called 911.

Officer Joshua Addison of the Stuttgart Police Department responded to the scene and saw a black male identified as Haynes in the driver's seat of a maroon Grand Am. Special Agent Bill McCraddock, an Arkansas State Police criminal investigator, arrived at the scene and found Haynes's body in the driver's seat with gunshot wounds to his head, left shoulder, and right forearm. He discovered six .40-caliber Smith & Wesson spent shell casings at the scene, a bullet fragment lying in the front passenger seat, and steel metal jackets on Haynes's body. Special Agent Scott Rosegrant, the Arkansas State Police lead criminal investigator, reviewed security videos from three separate cameras located at the Riceland Foods plant and identified a Dodge Ram dually truck that was likely involved in the homicide. The Dodge truck had numerous distinctive features, including a green-over-tan color scheme, running lights on the windshield, two brake lights above the rear windshield, running lights on the rear panels, mud flaps, and a Texas license plate.

Police identified Jeffery and Jonathan Dabner as the suspects, and Dabner pleaded guilty in a separate case to unlawful discharge of a firearm from a vehicle. On June 9, 2016, the day after the murder, McCraddock, Rosegrant, and Sergeant Morris Knight obtained a

2

search warrant and searched the Dodge truck, which was registered in Dabner's brother's name. The officers discovered in the truck an unfired Winchester .40-caliber Smith & Wesson bullet in the storage pocket on the back of the driver's seat. The officers also found an Academy Sports receipt dated May 26, 2016, reflecting a purchase of, among other things, a Smith & Wesson .40-caliber handgun and .40-caliber Smith & Wesson ammunition. Rosegrant recovered a video of Jeffery and Dabner getting out of the Dodge truck in the parking lot of Academy Sports. Video also showed both men at the gun counter of the store, and Dabner purchased the items that were listed on the Academy Sports receipt found in the Dodge truck.

On September 7, 2018, the State charged Jeffery with capital murder, possession of a firearm by certain persons, and first-degree unlawful discharge of a firearm from a vehicle. On December 7, 2022, he proceeded to trial. Among those persons who testified for the State was Jeffery's wife, Keya. She testified that she worked in payroll at Riceland Foods during the 7:00 a.m. to 3:00 p.m. shift and that she had met Haynes at Riceland Foods. She testified that she had heard a rumor at work that she and Haynes were having an affair. On cross-examination, she admitted that Jeffery was aware of the rumor and that it had caused friction in their marriage. Special Agent Oscar Bullard of the Arkansas State Police testified that when he interviewed Keya, she stated that her husband believed she and Haynes were having an affair.

Byers testified that she knew about the affair between Keya and Haynes. Byers stated that she had walked into the office while Keya and Haynes were having sex. She also heard Haynes on the phone with Keya during the night shift when "[Keya] wasn't asleep." Byers

also testified that Keya would come to Haynes's office every morning around 5:00, which was before his night shift ended and her day shift started. Byers stated that, on the evening of the murder, she "passed a vehicle coming in [the Riceland Foods property] before [she] went in." Byers pulled her car beside Haynes's car, called his name, and noticed "[t]hat the top of the window was shattered." She testified that she "turned the light on, on [her] phone, and seen him in the car like he was and started screaming at that point and calling his name, got no answer, and called 911." Byers also testified that Keya called her the day after Haynes was murdered and stated that Jeffery had fired a gun at her the weekend before the murder.

Byron Cook, a farmer from Stuttgart, testified that he had known Jeffery and Dabner since childhood and that he saw both men on the night of June 8, 2016. Cook recalled that Jeffery was driving the Dodge truck with "another guy in the passenger seat and a lady." Cook described the Dodge truck as "green over tan" with a trailer and fishing boat attached to it. According to Cook, Jeffery stated that he and Dabner had gone fishing that day and asked Cook if they could leave the trailer at his house. Cook stated that they stayed at his house approximately twenty minutes before Jeffery drove away in the Dodge truck.

Rosegrant testified that he determined the location of three cameras on the Riceland Foods property. In the first security video, the Dodge truck, which Rosegrant determined was the truck involved in the homicide, appears at approximately 10:22 p.m. on June 8, traveling eastbound on Second Street. The first video also showed Derek Jameson, a Riceland Foods employee, walking away from the plant toward his car and turning on his car lights. The second security video showed the Dodge truck entering the First Street gate

4

traveling toward the Riceland Foods parking lot. The third security video showed the Dodge truck traveling into the Riceland Foods parking lot and stopping beside Jameson's car at 10:26 p.m. During Rosegrant's testimony, photographs of the Dodge truck were admitted into evidence. Those photographs depicted a green-over-tan Dodge dually truck with running lights on top of the windshield and lights on the back quarter panel on both sides of the truck, mud flaps with a white-colored insignia, and a Texas license plate. Rosegrant also testified that he was involved in executing a search warrant on the Dodge truck, discovered an Academy Sports receipt for the purchase of a .40-caliber gun and ammunition, and recovered a video from Academy Sports showing Jeffery and Dabner exiting the Dodge truck and purchasing those items on the May 26, 2016 receipt that police discovered during their search of the vehicle.

Jameson also testified at trial. He stated that Haynes employed him at Riceland Foods and that he had known Jeffery for years. Jameson testified that, on the evening of June 8, he went to his car to smoke a cigarette, and Jeffery "just pulled up." Jameson testified that Jeffery was driving "a big [d]ually truck," and they talked "about five minutes or so" about fishing that day. Jameson said someone else was in the vehicle, but he could not tell who it was. Jeffery told Jameson that the truck belonged to his cousin and that it "had Texas tags on it."

Larry Ratton, who worked at Riceland Foods driving a yard truck at night, testified that on the evening of June 8, 2016, he "was pulling trailers around the yard" and remembered seeing a green-and-tan dually truck. He stated, "Well, I was on my way . . . going to the dock . . . and there was a green Dually come out of the parking lot. . . . When

5

I seen him, he was coming out of the parking lot[.] . . . He was just driving, and he passed me and he got down to the railroad track." When Ratton left the property, he saw a local police officer, a car on the railroad track with "a lady driving it," and "the car Chris Haynes was driving was behind it." Ratton estimated that approximately fifteen minutes transpired between seeing the dually truck and seeing Haynes's vehicle.

Leo Timmons, Jeffery's cousin, explained that Jeffery had hired him to "kill Black . . . [t]he guy used to wear a black jersey. . . . We called him Black." Timmons explained that Black was a nickname for Jameson. According to Timmons, Jeffery called Timmons and "was concerned about Jameson" who "was the only one that could put him at the mill, hanging around." Timmons stated that Jeffery offered him $10,000 to kill Jameson and devised several plans, but those plans fell through. Timmons stated that he received $1000 from Jeffery and "waited for him on the highway . . . [c]oming through Egypt . . . [and] started shooting," but the gun jammed, and Jameson "got away." Jameson had recounted those events on May 5, 2019, by stating that Timmons started "[s]hooting at me and my car. They shot my car up and hit me. Hit me in my leg."

Rebecca Mullen, the chief firearm and toolmark examiner at the Arkansas State Crime Laboratory, testified that she received and examined portions of ammunition that "had been collected either at the scene or from the body of the deceased." She opined that the spent shell casings had been fired from the same firearm and that the bullets and fragments were consistent with a .40-caliber Smith & Wesson brand of firearm. Additionally, Dr. Stephen Erickson, the deputy chief medical examiner at the Arkansas State Crime Laboratory, testified that he conducted an autopsy on Haynes and found six gunshot

6

wounds. He stated that five of the bullets traveled through the tissue, "all going left to right and downward." Erikson noted gunshot wounds to Haynes's left cheek, right forearm, and left shoulder area. When asked if Haynes's wounds denoted "someone sitting in the driver's seat, coming through the driver's side window, hitting the left shoulder, [and the] left side of the body," Erikson responded, "Yes. With the arm up like this." He opined that the cause of death was the result of multiple gunshot wounds.

Jeffery moved for a directed verdict at the close of the State's case, and the circuit court denied the motion. The defense presented its witnesses and, at the close of the evidence, moved for a directed verdict, which the circuit court again denied. After deliberations, the jury convicted Jeffery of capital murder and first-degree unlawful discharge of a firearm from a vehicle. On January 12, 2023, the circuit court entered an order convicting him of capital murder and first-degree unlawful discharge of a firearm from a vehicle  and sentencing him to life imprisonment plus seventy years with an enhancement of fifteen years on each count for committing a felony with a firearm. Jeffery timely filed his appeal.

## II. *Motions for Directed Verdict*

For the sole point on appeal, Jeffery argues that the circuit court erred in denying his motions for directed verdict because, as he claims, the State failed to present substantial evidence that he committed the offenses of capital murder or unlawful discharge of a firearm from a vehicle. Specifically, he maintains that "[a]n essential element to both of [his] convictions is the discharge of a firearm from a vehicle" and asserts that "the prosecution

7

failed to provide substantial evidence that [he], alone, or with another person, discharged a firearm from the vehicle."

We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Calkins v. State*, 2024 Ark. 23, at 6, 682 S.W.3d 681, 685. In reviewing this challenge, we view the evidence in a light most favorable to the State and consider only the evidence that supports the conviction. *Id.*, 682 S.W.3d at 685. We will affirm the verdict if substantial evidence supports it. *Id.*, 682 S.W.3d at 685. Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Id.*, 682 S.W.3d at 685–86. It is the function of the jury—not the reviewing court—to evaluate the credibility of witnesses and to resolve any inconsistencies in the evidence. *Id.* at 6–7, 682 S.W.3d at 686.

Circumstantial evidence may constitute substantial evidence to support a conviction. *Smith v. State*, 2022 Ark. 95, at 7. For circumstantial evidence to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Id.* Upon review, this court must determine whether the jury resorted to speculation and conjecture in reaching its verdict. *Id.*

Pursuant to Arkansas Code Annotated section 5-10-101(a)(10) (Repl. 2013), a person commits capital murder if the person "[p]urposely discharges a firearm from a vehicle at a person or at a vehicle . . . that he or she knows or has good reason to believe to be occupied by a person; and [t]hereby causes the death of another person under circumstances manifesting extreme indifference to the value of human life." Under the capital-murder statute, an intent to kill is not required; the purposeful mens rea in the statute refers only to

8

the act of discharging a firearm. *Thomas v. State*, 2020 Ark. 154, at 8–9, 598 S.W.3d 41, 45. The act of firing a gun into an occupied vehicle is sufficient to support the jury's verdict. *Id.* at 9, 598 S.W.3d at 45. Additionally, pursuant to Arkansas Code Annotated section 5-74-107 (Repl. 2016), a person commits the first-degree offense of unlawful discharge of a firearm from a vehicle when a person "knowingly discharges a firearm from a vehicle and by the discharge of the firearm causes death or serious physical injury to another person." Ark. Code Ann. § 5-74-107(a)(1).

Here, in viewing the evidence in a light most favorable to the State, we conclude that substantial evidence supports both convictions. First, the State presented evidence that Jeffery had access to a .40-caliber handgun. At the scene, officers recovered live ammunition, shell casings, bullets, and bullet fragments. The State presented a video during which Jeffery was seen with Dabner on May 26, 2016, as Dabner purchased a .40-caliber gun and ammunition at the gun counter at Academy Sports. Moreover, Jeffery's wife, Keya, told Byers that Jeffery had shot toward her the weekend before Haynes was murdered.

Next, the State presented evidence of Jeffery's presence at the Riceland Foods plant on the evening of the murder and that he drove the Dodge truck. One Riceland Foods security video admitted into evidence showed the Dodge truck stop next to Jameson's vehicle. Jameson testified that he saw Jeffery driving the Dodge truck, as he had a short conversation with Jeffery about fishing that particular day. The medical examiner opined that, based on Haynes's multiple gunshot wounds, the trajectory of the bullets was consistent with shots being fired from "a more elevated position."

Last, the jury heard testimony that Jeffery had hired Timmons to kill Jameson. At trial, Timmons testified because Jameson "was the only one that could put him at the [Riceland Foods plant], hanging around." This evidence shows that Jeffery was attempting to silence a witness, and, thus, is independently relevant to prove the crime charged. *Rohrbach v. State*, 374 Ark. 271, 279, 287 S.W.3d 590, 597 (2008).

In light of the foregoing evidence, as well as our standard of review, we conclude that the jury could have reached a conclusion with reasonable certainty, without resorting to speculation or conjecture, that on the night of Haynes's murder, Jeffery drove the Dodge truck, pulled next to Haynes's car, discharged a firearm from the vehicle, and the firearm caused Haynes's death under circumstances manifesting extreme indifference to the value of human life. Therefore, we hold that the circuit court properly denied Jeffery's motions for directed verdict. Accordingly, we affirm.

### III. *Rule 4-3(a)*

Because Jeffery received a sentence of life imprisonment, the record has been reviewed for all errors prejudicial to him, as required by Arkansas Supreme Court Rule 4-3(a). No reversible error was found.

Affirmed.

*James Law Firm*, by: *William "O." Bill James*, and *Drew Curtis* for appellant.

*Tim Griffin*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.