**Tommy D. TATUM, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 10–788.**

Court of Appeals of Arkansas.

Feb. 2, 2011.

J. Brent Standridge, Benton, for appellant.

Kathryn Henry, Little Rock, for appellee.

RITA W. GRUBER, Judge.

Tommy D. Tatum was charged in Saline County with two counts of first-degree terroristic threatening for his involvement in events at a Bryant gas station on July 24, 2009. The felony information alleged that Tatum, while holding a knife, threatened to kill Holly White with the purpose of terrorizing her, and that he committed an identical act toward her husband, Justin White. Tatum was tried in a bench trial, was found guilty on both counts, and was sentenced to concurrent terms of thirty days in the county jail and six years' probation. On appeal he contends that 1) the evidence was not sufficient to support the verdicts, and 2) the circuit court erred in denying his motion for mistrial as a result of a discovery violation. We disagree and affirm.

When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in the light most favorable to appellee and affirm if substantial evidence supports the guilty verdict. *Turner v. State*, 2010 Ark. App. 214, 2010 WL 724307. Substantial evidence is evidence that will, with reasonable certainty, compel a conclusion one way or another without resorting to speculation or conjecture. *Id.* It is within the province of the finder of fact to determine the weight of the evidence and the credibility of the witnesses. *Id.*

The State's witnesses included investigating officers and eyewitnesses who had observed the incident at the Murphy USA gas station. Tatum testified in his own defense. Also introduced into evidence was a copy of the station's video recording of the premises during the time frame at issue. The recording was played during the testimony of witnesses including Tatum, who variously identified vehicles, people, and actions it depicted.

Tamara Gullett, a school teacher, testified that she and her ex-husband were at a gas pump at the station, and a young couple, later identified as Justin and Holly White, pulled in behind them. Gullet noticed Tatum stop his Harley motorcycle down the road from the gas station and begin walking forward, brandishing an open knife and threatening them with it, and calling the young woman a b---- several times. Gullet also heard him direct remarks to the couple: "You motherf---ers pulled out in front of me. Come and get you some of this. I'm gonna f---ing kill

you. I'm gonna find out where you live and f---ing kill you." Gullet saw Justin get a tire tool when Tatum, after approaching and making the threats, came closer with the knife. She testified that she and her ex-husband walked over to Justin, who did nothing with the tool, and told him not to go near Tatum. Gullet described Tatum's demeanor as extremely aggressive, his walk toward them purposeful, and his volume extremely loud.

Sergeant Shawn Fullington of the Bryant Police Department stopped Tatum on his motorcycle near the gas station that Tatum had left minutes before, and Officer Nathan Johnston came to assist. Their testimony revealed that Tatum parked and aggressively walked toward the patrol car and toward Fullington, who got out of the vehicle and drew his gun. Tatum was upset and angry, and he initially failed to obey commands to go back and place his hands on his head. He told them he was a Marine who "wouldn't take no shit off nobody" or call the police about someone pulling in front of him because it "would've been a p---y thing to do." He referred to Justin as a "punk-ass kid" and admitted pulling a knife; he had a knife clipped to his pants pocket when he was stopped.

State's witness Phillip Glenn testified that he left the Wal–Mart parking lot and noticed "some kind of a problem" with Tatum, who was standing near a motorcycle and waving a knife at several people by the gas station. Glenn testified that he parked and got out to ask Tatum, who was directing "G.D." and "M.F." cuss words toward a young couple, what his problem was. The prosecutor asked, "And you said you asked him what the problem was?" Glenn answered, "I got out of my vehicle and asked him what his problem was and then he told me to—." Defense counsel objected that this was not in Glenn's state-ment and had not been disclosed in discovery.

The State noted that counsel had a list of witnesses and could have talked to any of them. Counsel replied that he was entitled to the statement as part of discovery and that he would move for a mistrial should anything new be interjected into the case. Glenn then testified that Tatum, whose attitude was "loud and quite blunt," told him to get in his own vehicle or Tatum would cut his "M.F. throat from ear to ear." Counsel moved for a mistrial on the basis that the statement was damaging and had not been disclosed. The State argued that Tatum's statement "wasn't . . . made to law enforcement, it was a statement made to a witness who was disclosed in discovery and whom counsel could have interviewed at any time." The court denied the motion.

Drew Bennett, a schoolteacher, testified that he stopped to get gas and noticed that a man in a USMC shirt got off a motorcycle stopped down the road. He also saw a couple who got out of the SUV, which they parked at the back of his truck by the curb. Bennett heard Tatum cussing them, using "G.D. motherf---er" while coming toward them and saying he would hurt them. Tatum kept coming. He pulled out a blade like a switchblade, said he would "cut you motherf---er," called the lady a b----, and said he would find out where they lived and kill them. Then the young man pulled the tire tool, and the young woman told Tatum to "just go on." He told her, "Shut up, b----. Shut up you motherf-----g b----." Bennett described Tatum's behavior as aggressive and said he kept coming, waving the knife and saying, "Come on, motherf---er, I'll cut you up right here. . . ."

Holly and Justin White testified that Justin drove their SUV from the Wal–Mart parking lot to the gas station, that he

parked to buy cigars, and that the following events occurred. The Whites heard honking behind them and saw Tatum driving past on his motorcycle, "laying on his horn, flipping [them] off." Tatum parked in the middle of the road and walked toward them—"completely irate," screaming and cussing and pulling a knife. He said they had pulled out in front of him and he would beat Justin up. He waved his opened knife and told them he had their license-plate number, would find out where they lived, and would come kill them. Holly told him he needed to get back on his bike and go home. Tatum responded, "Shut up, you stupid effin' b---- I'll kill you." Justin got a tire tool from the back of the SUV and stood his ground. The Whites testified that they had not seen Tatum until he drove by, and they denied that Justin made gestures toward him. Justin testified that he had looked both ways before pulling out from Wal–Mart. Holly testified that she was afraid Tatum would indeed kill them.

Tatum testified in his own defense, presenting a version of events that portrayed Justin pulling out in front of him with no regard to safety and then, unlike people who were sorry, "makes this aggressive move, I mean, fakes around there like he's going to come and maybe chase me down." Tatum said that he stopped his motorcycle and got ready to defend himself because he thought the young man could run him over. He said that the young man was cussing him out. He admitted exchanging words and opening his knife, which another Marine had given to him and which was handy at the time. He denied saying anything to anyone else, such as the gentleman who testified about Tatum's saying he would cut his throat, and denied telling the couple he would kill them.

### Sufficiency of the Evidence

A person commits the offense of terroristic threatening in the first degree if with the purpose of terrorizing another person, he or she threatens to cause death or serious physical injury to another person or substantial property damage to another person. Ark.Code Ann. § 5–13–301(a)(1)(A) (Repl.2006). A person acts "purposely" with respect to his conduct or a result of his conduct "when it is the person's conscious object to engage in conduct of that nature or to cause the result." Ark.Code Ann. § 5–2–202(1) (Repl.2006). Evidence that a defendant's "conscious object" was to cause the person fright constitutes proof that a defendant had the purpose of terrorizing the person. *E.g., Knight v. State,* 25 Ark.App. 353, 758 S.W.2d 12 (1988).

Tatum moved for a directed verdict at the close of the State's case and again at the close of all the evidence; the motion was denied each time. Because this was not a jury trial, Tatum's motion for a directed verdict was actually a motion for dismissal. *See Turner v. State,* 2010 Ark. App. 214, 2010 WL 724307 (distinguishing the motions under Ark. R.Crim. P. 33.1(c)). A motion to dismiss in a bench trial, like a directed verdict in a jury trial, is a challenge to the sufficiency of the evidence. *Id.* Tatum argues on appeal, as he did below, that the State did not show he terrorized another person or threatened to cause death or serious injury to another person. He relies upon his own testimony that he did not threaten either of the victims in this case.

The circuit court found that the testimony supporting conviction was "not just a little convincing, extremely convincing." The court noted that two independent witnesses with no ax to grind stated very clearly they had heard Tatum threaten the Whites, telling them he would find out where they lived and come kill them.

There was abundant evidence, found by the fact-finder to be credible, that Tatum's conscious object was to frighten Holly and Justin with death or serious physical injury by threatening to beat up Justin and to go to the couple's home to kill them both. We have no hesitancy in holding that substantial evidence supports the conviction.

### Motion for Mistrial

Tatum contends that the circuit court erred in denying his motion for a mistrial, which was based upon the State's failure to disclose his oral statement that he would cut witness Glenn's "M.F. throat from ear to ear." Tatum argues that the statement damaged him by making it appear that he was out to get everyone. He also argues that the State had knowledge of this statement, shown by the prosecutor's specifically questioning Glenn about the contents of the conversation and discussion of the "problem." Tatum requests that, in light of this discovery violation, his case be reversed and remanded for new trial.

Arkansas Rule of Criminal Procedure 17.1 (2010) states, in pertinent part, that

> the prosecuting attorney shall disclose to defense counsel, upon timely request, the following material and information which is or may come within the possession, control, or knowledge of the prosecuting attorney:
>
> (i) the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at any hearing or at trial; [and]
>
> (ii) any written or recorded statements and the substance of any oral statements ₈made by the defendant or a codefendant[.]

Rule 17.2 allows a prosecuting attorney to fulfill discovery obligations by adopting an "open file" policy and "notifying defense counsel that material and information, described in general terms, may be inspected, obtained, tested, copied, recorded or photographed, during specified reasonable times." Rule 19.7 allows a court to remedy a violation of discovery rules by permitting discovery, granting a continuance, excluding the undisclosed evidence, or entering an order that the court deems appropriate under the circumstances.

A mistrial is a drastic remedy, to be employed only when an error is so prejudicial that justice cannot be served by continuing the trial. *Peters v. State*, 357 Ark. 297, 166 S.W.3d 34 (2004). Granting or denying a mistrial is within the sound discretion of the trial court, whose decision will not be overturned absent a showing of abuse or manifest prejudice to the appellant. *Id.* If a defendant does not seek a lesser form of relief for failure to disclose discoverable material, and chooses instead only to request a mistrial, the most extreme remedy available to the trial court, a mistrial may properly be denied unless the fundamental fairness of the trial itself is at stake. *Snell v. State*, 290 Ark. 503, 512, 721 S.W.2d 628, 633 (1986). A defendant is not entitled to rely on the State's subpoena or witness list for his own defense because the accused is not entitled to rely on discovery as a substitute for his own investigation. *Rychtarik v. State*, 334 Ark. 492, 976 S.W.2d 374 (1998).

In *Hill v. State*, 370 Ark. 102, 257 S.W.3d 534 (2007), appellant appealed his convictions for kidnapping, aggravated assault, residential-burglary, second-degree battery, and ₉felon in possession of a firearm. On appeal he contended that error occurred at trial in the introduction of his statement to a witness, "This is going to end tonight," which had not been provided in his pretrial request for oral statements. The supreme court found no merit to Hill's argument that he was prejudiced by the testimony's implication that he intended to

harm someone because of ample other evidence indicating his desire to cause harm. Among the other evidence were his statement that he "could kill everybody" and testimony regarding his firing the gun and striking a victim. *Cf. Bowden v. State,* 297 Ark. 160, 761 S.W.2d 148 (1988) (reversing for withholding appellant's statement to a witness that he had an eight- or nine-millimeter automatic pistol, testimony that was crucial because nine-millimeter shell casings were found at crime scene).

In the present case, the prosecutor responded to Tatum's pretrial discovery request by referring to its open-file policy and list of witnesses, and we are not convinced that a discovery violation occurred. It is not clear that the prosecutor had knowledge of Tatum's oral statement, discoverable to the defense by interview, which was introduced through testimony that Tatum orally responded when Glenn asked him what his problem was. We do not find that the circuit court abused its discretion in allowing the testimony.

Nor did denial of Tatum's motion for a mistrial demonstrate an abuse of discretion by the circuit court or manifest prejudice to Tatum. First, he requested none of the lesser remedies allowed by Rule 19.7. Additionally, Tatum was not charged with threatening Glenn, and the statement proved no element of the State's case. Finally, as in *Hill, supra,* other testimony presented ample evidence that Tatum committed first-degree terroristic threatening against the Whites.

Affirmed.

VAUGHT, C.J., and ABRAMSON, J., agree.