SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CR–13–308

| | |
|---|---|
| NED WAYNE CAUFFIEL | **Opinion Delivered** November 6, 2013 |
| APPELLANT | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CR–11–661–2] |
| V. | |
| STATE OF ARKANSAS | HONORABLE GARY ARNOLD, JUDGE |
| APPELLEE | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Ned Wayne Cauffiel appeals his Saline County convictions for aggravated assault on a family or household member and first-degree terroristic threatening, alleging there was insufficient evidence to support the convictions.[1] We affirm.

The standard of review in a test of the sufficiency of the evidence is well settled. We review the evidence in the light most favorable to the State, considering only the evidence that supports the verdict. *Terry v. State*, 366 Ark. 441, 236 S.W.3d 495 (2006). We affirm the conviction if there is substantial evidence to support it; that is, if there is evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty, without resorting to speculation or conjecture. *Id*.

---

[1]Cauffiel had also been charged with first-degree false imprisonment, but the trial court dismissed this charge at the close of the State's case.

The evidence in this case stems from an incident between Cauffiel and Shelley Vocque, a former girlfriend with whom Cauffiel had a child.[2] Their relationship was volatile, and Vocque had previously obtained an order of protection against Cauffiel. After the protective order expired, Vocque agreed to allow Cauffiel to visit their son.

On the night of the incident, Vocque picked up Cauffiel to facilitate Cauffiel's visitation with their son because Cauffiel did not have his own transportation. Cauffiel had a rifle in a case with him when he entered Vocque's vehicle. They stopped at her parents' house to pick up the child, and then they drove next door to Vocque's home. They remained in her car in her driveway for approximately two hours. A discussion about child support occurred. Upon learning that child support had not been dropped, Cauffiel began to yell and curse at Vocque. He told her that he was going to "destroy" everyone who stood in the way of his relationship with his son and that he should go inside and make her family "face the thunder." He told her that she was ruining his life by putting him through the system. He also showed her that he had a police scanner app on his phone. Although his remarks had scared her, Vocque did not tell her family of Cauffiel's threats because of the scanner. Vocque did not try to leave because of the rifle, and she was afraid that he would attempt to take the child.

They finally went inside to put the child to bed. Each time Vocque received a text

---

[2]At trial, Cauffiel testified that the two were still in a relationship and that he had been living with Vocque for approximately one week. He further stated that he was unsure whether he was the father of Vocque's child, but admitted that a court had ordered him to pay child support for the child.

SLIP OPINION

message, Cauffiel grabbed her phone. When Cauffiel left the house for a period of time, Vocque did not contact anyone because she was afraid he was using his scanner and would know. Instead, she climbed into bed and pretended to sleep.

Upon return, Vocque heard Cauffiel yell and then heard him either cock or load his hunting rifle. He came into the bedroom and began to pace, leaving the rifle propped up at her bedroom door. He repeated that he was going to destroy everyone and that he would not allow Vocque to stand in the way of him and the child. He told her that he was trying to call his father. He was attempting to have his father talk him out of "it." Based on their previous history, Vocque believed that Cauffiel was threatening her life. Although he never actually pointed the rifle at her or specifically threatened to shoot her, she believed he had loaded the rifle and would do so.

Cauffiel eventually fell asleep, but Vocque could not do so. In the morning when he awoke, she dropped him off at his father's house. She then went to the sheriff's office and obtained another order of protection.

Cauffiel was convicted of aggravated assault on a family or household member. A person commits aggravated assault on a family or household member if, under circumstances manifesting extreme indifference to the value of human life, the person purposely engages in conduct that creates a substantial danger of death or serious physical injury to a family or household member. Ark. Code Ann. § 5-26-306(a) (Repl. 2006). Cauffiel argues that the evidence was insufficient to support this conviction. Cauffiel disputes Vocque's testimony and denies cocking or loading the rifle or leaning it by the bedroom door. Rather, he states

3

that the rifle, which he carried because he had been hunting, remained in his bag behind the couch. The credibility assessment of witnesses is the responsibility of the finder of fact. *Turner v. State*, 2012 Ark. App. 150, 391 S.W.3d 358. The trier of fact was free to disbelieve his statement of the event. Cauffiel contends that, because he never directly pointed the cocked or loaded rifle at Vocque or the child, there was no evidence that he created a substantial danger of death or serious physical injury. He is incorrect. The record contains substantial evidence that Cauffiel became angry, either loaded or cocked a rifle, placed the rifle in a position of easy access, and attempted to have his father talk him out of "it." Given Cauffiel's past history of violence, his demeanor and statements that evening, the act of preparing the gun to be used and the subsequent threat to use it are sufficient to satisfy the statute.

Cauffiel was also convicted of terroristic threatening. A person commits the offense of first-degree terroristic threatening if, with the purpose of terrorizing another person, he threatens to cause death or serious physical injury to another person. Ark. Code Ann. § 5-13-301(a)(1)(A). A person acts "purposely" with respect to his conduct or a result thereof when it is his conscious object to engage in the conduct of that nature or to cause the result. Ark. Code Ann. § 5-2-202(1). Evidence that it was a person's conscious object to cause a person fright constitutes proof that the defendant acted with the purpose of terrorizing the person. *See Tatum v. State*, 2011 Ark. App. 80, 381 S.W.3d 124.

Cauffiel argues that there was insufficient evidence that he had the intent to commit the crime of terroristic threatening. The record contains substantial evidence that Cauffiel

4

made statements that people would have to "face the thunder"; that he would "destroy" anybody who stood in the way of him and his son; and that he attempted to call his father to talk him out of "it." The latter statement was made after Cauffiel had cocked or loaded a firearm, while pacing the floor in an agitated manner. Admittedly, these statements may not be a clear, direct threat that he would kill. However, when taken in context, they are not the vague and innocuous statements that Cauffiel characterizes them to be. Rather, when viewed in the context of the volatile relationship between the parties and Cauffiel's actions that evening, these statements clearly rise to the level sufficient to support a conviction for terroristic threatening.

Affirmed.

HARRISON and GRUBER, JJ., agree.

*J. Brent Standridge*, Saline County Deputy Public Defender, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.