Cite as 2023 Ark. 181

# SUPREME COURT OF ARKANSAS
**No.** CR–23–84

| | |
|---|---|
| | **Opinion Delivered:** December 7, 2023 |
| MICHAEL EUGENE DRIVER | |
| APPELLANT | APPEAL FROM THE CONWAY COUNTY CIRCUIT COURT [NO. 15CR-19-378] |
| V. | |
| STATE OF ARKANSAS | HONORABLE JERRY D. RAMEY, JUDGE |
| APPELLEE | |
| | AFFIRMED. |

**SHAWN A. WOMACK, Associate Justice**

Michael Driver appeals his rape and sexual-assault convictions, claiming there was insufficient evidence to find him guilty of rape and second-degree sexual assault, that the circuit court erred by admitting his statements made to police, and that the circuit court abused its discretion by admitting evidence of non-charged conduct. We hold that substantial evidence supports Driver's rape and sexual-assault convictions, the circuit court did not err by admitting his statements made to police, his evidentiary issue on jury confusion is not preserved, and that the circuit court did not abuse its discretion by admitting the testimony of Driver's additional victims. His convictions are affirmed.

## I. *Facts*

In November 2019, Michael Driver took his twelve-year-old developmentally delayed relative (hereinafter, Victim One) on a ride in his tow truck. When they arrived at

Cogswell Towing, he pulled her into a room, lowered her shorts and underwear, and began having intercourse with her. Driver wore a condom and discarded it in the trash.[1]

After speaking with her school occupational therapist, Victim One discussed subject matter that required her therapist to contact the Department of Human Services Child Abuse Hotline. The Arkansas State Police then contacted the Morrilton Police Department regarding the rape of Victim One. Detective Kristopher Wilson of the Morrilton Police Department then interviewed Victim One and her parents before referring her to the Child Advocacy Center for a forensic interview.[2]

Detective Wilson contacted Driver on November 21, 2019, and requested that he come to the police department for an interview. Upon Driver's arrival, he was informed of his *Miranda* rights, provided a written waiver of those rights, and engaged in discussions with investigators. During this conversation, Driver responded to inquiries regarding the allegations made by Victim One, maintaining that no inappropriate incidents had occurred between them. When asked about taking a lie-detector test, Driver initially agreed but later asked to consult with an attorney, resulting in the conclusion of the interview.

The interview with the Child Advocacy Center also uncovered that Driver had inappropriate sexual contact with another minor female relative (hereinafter, Victim Two). In 2019, Driver picked up Victim One, Victim Two, and their younger brother after school.

---

[1] Law enforcement ultimately secured a search warrant for Cogswell Towing to examine the contents of the trash. Within the trash, officers discovered two used condoms, which were sent to the Arkansas State Crime Laboratory. It was determined that both condoms contained Driver's DNA on the interior.

[2] At some point during the interview process, Victim One claimed that Driver had raped her some 300 times.

2

Driver sought to take the children to a riverside location known as the "Green Thumb." While driving, Driver "touched right down [Victim Two's] side" and inquired about her boyfriend. Victim Two told Driver that she was a lesbian, and he responded by asking the child, "Well, how do you lesbians get off?" The child responded with— "a cucumber." Driver then responded, "[I]t must be wore out," and "[If] I wasn't your [relative] and I was younger, I'd try to date you." Then, after arriving at the Green Thumb, Driver slapped Victim Two on the buttocks.

During the course of the investigation, Driver's phone had been seized and searched pursuant to a warrant. On December 2, 2019, Detective Wilson called Driver to retrieve it. This sparked a second interview based on the new information from the Child Advocacy Center. Driver was again read his *Miranda* rights, again signed a waiver of those rights, and again spoke with investigators. He answered questions regarding Victim One's allegations, maintaining that nothing inappropriate had occurred, and then later asked to speak to an attorney and left the police station. Subsequently, police received an arrest warrant for Driver pursuant to Victim One's allegations. He was arrested and ultimately released on bond on December 18, 2019.

On January 10, 2020, Detective Wilson and Officer Chris Willcutt went to Driver's residence for an unrelated matter and, while there, conducted another interview. The officers recited Driver's *Miranda* rights, which he again chose to waive, and proceeded to present him with information regarding new allegations from a third victim. Driver again denied that anything had happened and requested that he speak to an attorney, and the interview concluded. On January 15, 2020, while Driver was in jail, officers had their final

3

interview with him; this was sparked by additional victims coming forward. Driver again was read his *Miranda* rights, which he again waived, but this time he confessed to raping Victim One, sexually assaulting Victim Two, and raping two of the additional victims.

Prior to the trial, Driver submitted motions to exclude the three interviews following his request for legal counsel on November 21, 2019. The circuit court denied the motion to suppress. It found that, based on the totality of the circumstances, Driver did not unambiguously and unequivocally invoke his right to remain silent or for counsel in the fourth interview. On August 29, 2022, Driver was tried before a jury and found guilty of rape and second-degree sexual assault and was sentenced to concurrent terms of life imprisonment and twenty-five years.

Driver now appeals his convictions, claiming there was insufficient evidence to find him guilty of rape and second-degree sexual assault, that the circuit court erred by admitting his statements made to police, and that the circuit court abused its discretion by admitting evidence of non-charged conduct.

II. *Analysis*

In his first issue on appeal, Driver contends that the circuit court should have granted his motion for a directed verdict as to counts one and two.

As a foundational matter, a motion for a directed verdict is a challenge to the sufficiency of evidence. *Starling v. State*, 2016 Ark. 20, 480 S.W.3d 158. In reviewing the sufficiency of the evidence, the court determines whether the verdict is supported by substantial evidence, either direct or circumstantial. *Id.* Substantial evidence is that which is forceful enough to compel a conclusion beyond suspicion or conjecture. *Id.* The

4

evidence is viewed in the light most favorable to the verdict, and only evidence that supports the verdict will be considered. *Id.*

*Rape Conviction*

Regarding Victim One, Driver contends that her mental capacity and the content of her statements on the stand render her noncredible and should have been disregarded. He attempts to support his argument by indicating that Victim One's testimony that he raped her 300 times is not reasonably probable.

To sustain the charge of rape, the State was required to prove Driver engaged in sexual intercourse or deviate sexual activity with a person less than fourteen years old. Ark. Code Ann. § 5-14-103(a)(3)(A) (Supp. 2019). "Sexual intercourse" includes penetration, however slight, of the labia majora by a penis. Ark. Code Ann. § 5-14-101(12) (Supp. 2019). The uncorroborated testimony of a rape victim is sufficient evidence to sustain a conviction. *See, e.g.*, *Witcher v. State*, 2010 Ark. 197, at 3, 362 S.W.3d 321, 322. A minor victim testifying that the defendant put his penis inside him or her is substantial evidence of sexual intercourse. *See Rohrbach v. State*, 374 Ark. 271, 275, 287 S.W.3d 590, 594 (2008).

Victim One testified that Driver took her to Cogswell Towing, pulled her into a room, pulled her shorts and underwear down, and "put his thing in [her.]". Victim One testified that Driver wore a condom and threw the condom in the trash after the rape. Officers recovered two used condoms from the trash in the shop, and the inside of both condoms contained Driver's DNA. Driver's son testified that, upon learning from officers that they had found the condoms, Driver attempted to have his son say the condoms were his rather than Driver's.

5

Victim One was able to accurately draw a layout of the shop and describe the layout of the room she was raped in and the items and furniture in it. Further, two other female family members testified that Driver had raped them, and two additional female family members testified that Driver had inappropriate physical contact with them, either above or below their clothing; all were between the ages of twelve and fourteen when the events occurred. Those additional victims showed that Driver had a proclivity to commit sex acts with minor females in his family and corroborated Victim One's testimony. Finally, Driver himself corroborated Victim One's testimony by admitting to officers that the rape occurred in one of the offices at Cogswell Towing. Accordingly, there was substantial evidence to support Driver's rape conviction, and we affirm his conviction.

*Second-Degree Sexual Assault*

In order to obtain a conviction of second-degree sexual assault, the State was required to prove Driver engaged in sexual contact with Victim Two by forcible compulsion. Ark. Code Ann. § 5-14-125(a)(1) (Supp. 2019). "Sexual contact" is any act of sexual gratification involving the touching, directly or indirectly, of the sex organs or buttocks or anus of a person, or the breast of a female. Ark. Code Ann. § 5-14-101(12)(A) (Supp. 2019).

Driver argues that slapping Victim Two on the buttocks was not an act of sexual gratification because that act is commonplace in the sports world to mean "good job" or "good try." He goes on to argue that the State failed to present any evidence that Driver's act of slapping Victim Two's buttocks was an act of sexual gratification.

Here, the facts indicate that the desire for sexual gratification was a reason for the slap. The slap of Victim Two's buttocks was preceded by a conversation in which Driver

6

questioned and commented on Victim Two's sexual desires, including a reference to how often she, a child, masturbates. Driver also told the child that he would date her if they were not relatives and he was younger. Therefore, these actions, put together, leave no ambiguity as to Driver's sexual gratification and desire toward Victim Two. Ultimately, substantial evidence supports Driver's conviction for second-degree sexual assault, and we affirm his conviction.

In his second point on appeal, Driver argues that the trial court erred in denying the motion to suppress his statements because the police initiated the interviews, and the waivers were invalid. Specifically, Driver argues that his initial request for an attorney during the first interview should have carried over to any subsequent interviews, and because his second and third statements were not voluntary, that his second, third, and fourth interviews should have been deemed inadmissible.

*Fifth Amendment Analysis*

In reviewing the denial of a motion to suppress a custodial statement, this court makes an independent determination based on the totality of the circumstances and will reverse the trial court only if its decision is clearly against the preponderance of the evidence. *Decay v. State*, 2009 Ark. 566, at 3, 352 S.W.3d 319, 324.

A person subject to custodial interrogation must first be informed of his right to remain silent and right to counsel under *Miranda v. Arizona*, 384 U.S. 436 (1966). "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda*, 384 U.S. at 473–74. Once the right to remain silent is

invoked, it must be "scrupulously honored."[3]  *State v. Pittman*, 360 Ark. 273, 276, 200 S.W.3d 893, 896 (2005); *Whitaker v. State*, 348 Ark. 90, 95, 71 S.W.3d 567, 570 (2002) (citing *Miranda*, 384 U.S. at 479).

The Fifth Amendment explicitly indicates that "no person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  It is well established that a practical application of that constitutional provision manifests itself in the accused having the right to have counsel present during a "custodial interrogation."  *Edwards v. Arizona*, 451 U.S. 477, 482 (1981).  "Custodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  *Miranda*, 384 U.S. at 444.

In determining whether a person is indeed in custody, the fundamental inquiry is whether there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.  *Yarborough v. Alvarado*, 541 U.S. 652, 662 (2004).  This analysis is based on how a reasonable person in the suspect's situation would perceive his circumstances.  *Id.* at 663.  "If the defendant is not in custody, then [*Miranda* and its progeny] do not apply;

---

[3] The meaning of "scrupulously honored" was discussed in *James v. Arizona*, 469 U.S. 990, 992–93 (1984) (mem.) (Brennan, J., dissenting):

> To ensure that officials scrupulously honor this right, we have established in *Edwards v. Arizona*, [451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981)], and *Oregon v. Bradshaw, supra*, the stringent rule that an accused who has invoked his Fifth Amendment right to assistance of counsel cannot be subject to official custodial interrogation unless and until the accused (1) "initiates" further discussions relating to the investigation, and (2) makes a knowing and intelligent waiver of the right to counsel under the [waiver] standard of *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), and its progeny. *See Solem v. Stumes*, 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984).

8

nor do they govern other, noninterrogative types of interactions between the defendant and the State." *Montejo v. Louisiana*, 556 U.S. 778, 795, (2009).

## A. First Interview

Regarding the initial November 21, 2019, interview, Detective Wilson testified:

> After having spoken with my first victim -- juvenile victim and their parents, as well as, her brother, which was a witness. I gave Michael Driver a phone call and asked him to come to the police department for an interview.

Law enforcement officers started the interview by informing Driver of his *Miranda* protections and explicitly notifying him that he was free not to answer any of their questions. Driver voluntarily came to the station, the interview lasted less than seventeen minutes, police made no deceptive or coercive suggestions that would lead him to assume he was in custody, and he was wearing his work uniform—not handcuffed or shackled in any way. Additionally, he was free to leave immediately following the interview. Then, when questioned if he would be willing to take a lie-detector test, Driver initially said, "I guess so," but then requested to speak with a lawyer first. The interview then stopped, and the police did not question him further.

## B. Second Interview

The second interview occurred on December 2, 2019, when Detective Wilson called Driver to retrieve his seized cellphone. In the period between the two interviews, law enforcement had received additional information that led them to believe there was a second victim and an additional criminal act. Before the second interview commenced, Driver was advised of and expressly waived his *Miranda* rights via written waiver. Law enforcement once again questioned Driver about the incident with Victim One. Before concluding the

interview, law enforcement asked Driver if there was anything he wanted to tell them.  He responded, "Not at this moment," and again requested to speak with a lawyer, at which time the interview ceased.

## C. Third Interview

On January 10, 2020, Detective Wilson and Officer Willcutt conducted their third interview while at Driver's residence.  Law enforcement officers started the interview by informing Driver of his *Miranda* protections and explicitly notifying him that he was free not to answer any of their questions.  This time Driver was at his home, the interview was brief, the record does not indicate that police made any deceptive or coercive suggestions that would lead him to assume he was in custody, and he was not handcuffed or shackled at the time of questioning.  Therefore, in making an independent determination based on the totality of the circumstances, we conclude that a reasonable person in Driver's situation would perceive that he was not under police custody in the third interview.[4] *See Yarborough*, 541 U.S. 663.[5]

---

[4] There is no physical recording of the third interview, which leaves us to analyze whether he was custodially interrogated exclusively on testimonial evidence.

[5] Driver argues that the circuit court never found that he was in custody, and the State did not make that argument at the circuit court level.  The State's response to the motion to suppress, however, was broad enough to encompass the custodial issue.  Further, in reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court.  *See Lewis v. State*, 2023 Ark. 12.  Therefore, we may affirm the circuit court if it reaches the right result, even for the wrong reason.

We recognize that Driver argues that his initial request for an attorney during the first interview should have carried over to any subsequent interviews and that his second and third interview statements were not voluntary. However, even when considering his assertions in the most favorable light, twenty-two days had passed between when Driver was released from custody on bond on December 18, 2019, and the third interview. The United States Supreme Court has established a general rule that police may reinterrogate a suspect who has previously invoked his Fifth Amendment right to counsel if there is a break in custody of at least fourteen days. *See Maryland v. Shatzer*, 559 U.S. 98, 103, (2010).[6] This rule permitted law enforcement to commence questioning during the third interview, regardless of whether a custodial interrogation occurred in interview one or two.

## D. Fourth Interview

On January 15, 2020, officers had their fourth interview with Driver while he was in police custody. Driver was read his *Miranda* rights, which he again clearly and unambiguously waived, but this time he confessed to raping Victim One, sexually assaulting Victim Two, and raping two additional victims in unrelated cases. Five days passed from the time he invoked his *Miranda* rights at his home until this interview. Since Driver was not in custody during his third interview, his invocation of *Miranda* and its progeny do not apply in the fourth interview. *See Montejo*, 556 U.S. 795. Consequently, any information gathered from the fourth interview, as it relates to Driver's Fifth Amendment protections,

---

[6] One who has been arrested and arraigned but subsequently released on bond is not "in custody" for Fifth Amendment purposes. *See Bohanan v. State*, 336 Ark. 367, 371, 985 S.W.2d 708, 710 (1999) (regarding Rule 37 relief, petitioner who is out on bond is not "in custody").

was admissible. Therefore, the circuit court's decision was not against the preponderance of the evidence, and we affirm its decision.

*Sixth Amendment Analysis*

In addition to his Fifth Amendment argument, Driver also argues that his Sixth Amendment right to counsel was violated in the final two interviews. Driver was arraigned and requested counsel on January 8, 2020, invoking his Sixth Amendment right to counsel. He claims that because his Sixth Amendment right to counsel attached upon his arraignment, the third and fourth interviews violated his Sixth Amendment right to counsel under *Michigan v. Jackson*, 475 U.S. 625 (1986).

*Jackson* is no longer good law, and police may interrogate a defendant who has invoked his Sixth Amendment right to counsel so long as he validly waives that right. *See Montejo*, 556 U.S. 797. Before the third and fourth interviews commenced, Driver validly waived his Sixth Amendment right to counsel. Therefore, we find no Sixth Amendment issues.

Driver's third and final point on appeal is that the circuit court abused its discretion by admitting the testimony of Driver's additional victims. Specifically, Driver claims that the three witnesses' testimony confused and misled the jury and was more prejudicial than probative.

Arkansas Rule of Evidence 403 permits the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. At his trial, Driver argued that the evidence

12

was substantially outweighed by its prejudicial effect, and it would be confusing to hear about multiple victims in other settings.

The circuit court rejected this argument and found that the probative value was not substantially outweighed by the danger of unfair prejudice. It did not, however, make a ruling as to whether the probative value was substantially outweighed by the danger of confusion of the issues. Therefore, since an argument is not preserved for appellate review unless the circuit court rules on the specific objection raised by the appellant, Driver's argument that the evidence's probative value was substantially outweighed by the danger of confusion of the issues is not preserved for appeal. *See Gulley v. State*, 2012 Ark. 368, 423 S.W.3d 569.

Regarding the issue of unfair prejudice, Driver argues that the evidence lost its probative value because the State had already shown his confession video. However, the mere presence of this video doesn't negate its probative value. Driver himself took the stand and denied all allegations against him, asserting that none of the incidents ever happened. Therefore, the testimony of the additional victims not only supported Driver's recorded confession and the statements of Victim One and Victim Two but also contradicted his subsequent claims that all the girls were lying, aligning with Arkansas Rule of Evidence 403, which states that relevant evidence should not be excluded unless its probative value is significantly outweighed by the unnecessary presentation of repetitive evidence.

Consequently, this testimony was not needlessly repetitive; it added credibility to the victims' accounts and countered Driver's assertion that all the girls were being untruthful. The probative value was not substantially outweighed by the risk of unfair prejudice, and

the circuit court's decision to admit the evidence was not an abuse of its discretion. Therefore, we affirm.

### III. *Rule 4-3(a) Review*

Driver received a sentence of life imprisonment, so the record has been reviewed for all errors prejudicial to him, as required by Arkansas Supreme Court Rule 4–3(a). No reversible error was found.

Affirmed.

WOOD, J., concurs.

**RHONDA K. WOOD, Justice, concurring.** I agree with the majority's disposition and analysis on the sufficiency of the evidence. I write separately because the majority gives a truncated analysis of the Fifth and Sixth Amendment issues, fails to give the full context to the admission of the evidence under Rule 403, and misapplies the standard of review.

Driver's second point on appeal is that the circuit court erred by denying his motion to suppress the incriminating statements he made to law enforcement on January 15, 2020. This was the fourth time he had spoken with law enforcement about allegations related to the charged conduct. Driver argues he had asserted his Fifth Amendment and Sixth Amendment rights to counsel in prior interviews, and that law enforcement could not constitutionally reinitiate an interview with him without his counsel present.

### I. *Could Law Enforcement Reinitiate Interviews Under the Fifth Amendment?*

Driver's Fifth Amendment argument centers on three interactions he had with law enforcement. Because Driver terminated these three prior interviews stating he would like to consult a lawyer, he claims this prevented law enforcement from initiating the fourth

14

interview on January 15.  Driver is correct that, jointly, *Miranda v. Arizona* and *Edwards v. Arizona* stand for the rule that once an individual invokes his Fifth Amendment right to counsel, law enforcement cannot initiate further questioning or interviews without counsel present.[1] Yet this skips a step in the analysis. Before Fifth Amendment rights attach, and *Miranda* and *Edwards* apply, one must be in custody.[2] Unlike the majority, I would not analyze custody in regard to the first two interviews, especially since the majority concludes that those first two interviews were irrelevant. More than fourteen noncustodial days passed between the second and third interviews. This means that even if he were in custody and asserted his rights in the first or second interview, he would not carry over any *Miranda* and *Edwards* rights to the third and fourth interviews.[3] So the custody analysis to determine whether Driver's Fifth Amendment rights attached begins with the third interview.

On January 10, 2020 (third interview), law enforcement went to Driver's home. He had been arrested but had been out on bond for about twenty-three days. He was not physically restrained. He was told that he did not need to speak to police and could have a lawyer present during his interview. He spoke very little. After they told him of new allegations, Driver requested an attorney and the interview ended.  Based on these facts, I would find that Driver was not in custody. As Driver was not in custody in this third interview, law enforcement was not prohibited under the Fifth Amendment from

---

[1]384 U.S. 436 (1966), 451 U.S. 477 (1981).

[2]*Montejo v. Louisiana*, 556 U.S. 778, 795 (2009) ("If the defendant is not in custody then [*Miranda* and its progeny] do not apply.").

[3]*Maryland v. Shatzer*, 559 U.S. 98, 109–12 (2010).

reinitiating the fourth interview of Driver (during which he made the incriminating statements).

II. *Could Law Enforcement Reinitiate Interviews Under the Sixth Amendment?*

The next question is whether Driver's Sixth Amendment right to counsel was violated in either the third or fourth interview. I would analyze Driver's argument as follows. Driver argues that upon his arrest, plea, and arraignment, he transitioned from suspect to accused. He states that, like his Fifth Amendment argument, law enforcement could not initiate further interviews with him without his counsel present because he had asserted his Sixth Amendment right to counsel. Driver argues that his right attached for certain on January 8 when he was arraigned and requested a public defender. He relies on the United States Supreme Court's bright-line rule in *Michigan v. Jackson* that once a Sixth Amendment right to counsel has been asserted, law enforcement cannot initiate an interview without counsel present.[4] But this bright-line rule was overruled.[5] In *Montejo v. Louisiana*, the U.S. Supreme Court clarified that a defendant can waive his Sixth Amendment right to counsel as long as his waiver is voluntary, knowing, and intelligent.[6] Further, "[t]he defendant may waive the right whether or not he is already represented by counsel."[7] The Supreme Court clarified that a valid waiver of *Miranda* rights validly waives the Sixth

---

[4]*Michigan v. Jackson*, 475 U.S. 625 (1986).

[5]*Montejo*, 556 U.S. at 797.

[6]*Id*. at 786.

[7]*Id*.

Amendment right to have counsel present as well.[8]

## III. *Validity of the Waivers*

Once one establishes that neither the Fifth Amendment nor the Sixth Amendment prevented law enforcement from reinitiating contact with Driver, the next step is to analyze Driver's waivers of his *Miranda* rights in the third interview (for purposes of his Sixth Amendment right to counsel) and fourth interview (for purposes of both his Fifth and Sixth Amendment rights to counsel). But Driver does not contest the validity of the waivers on appeal—only the initiation arguments above. So we do not need to analyze them and can conclude with finding that the circuit court did not err in denying Driver's motion to suppress his statements.

## IV. *Rule 404(b) and Rule 403*

I believe it is important that this court make plain that the evidence at issue—testimony that Driver had sexually assaulted other children—was first analyzed by the circuit court under the "pedophile exception" to Rule 404(b). The majority fails to mention Rule 404(b). Even though on appeal Driver did not expressly challenge the admissibility under the exception, this context is important to the analysis as a whole. One could read the majority opinion and mistakenly get the impression that such evidence is admissible under a straight Rule 403 probative-prejudice analysis. Evidence of other crimes committed by a defendant is generally *not* admissible to show a propensity by the defendant toward committing such offenses.[9] The pedophile exception to Rule 404(b) only allows the State

---

[8]*Id.*

[9]Ark. R. Evid. 404(b).

17

to introduce evidence of the defendant's similar acts with the same or other children "to show a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship."[10]

Second, although I agree with the majority that the evidence was admissible under Rule 403, I disagree that Driver's testimony at trial could justify the court's admission of this evidence. The circuit court could not have known whether Driver would testify in his own defense, nor what he was going to say, at the time it ruled on the admissibility of evidence in the State's case-in-chief.

Third, we review challenges to the admission of the evidence under an abuse-of-discretion standard of review. Though unstated by the majority, a court abuses its discretion when it acts thoughtlessly, improvidently, and without due consideration.[11] Rather than faithfully applying this standard of review, the majority makes fact findings that the testimony was not repetitive and even goes so far as to opine on the credibility of the victims' testimony. This is wholly improper for an appellate court when reviewing challenges to the admission of evidence. Given that the circuit court thoughtfully considered the various arguments and made a reasoned decision, the court did not abuse its discretion and I would affirm.

For these reasons, I concur.

---

[10] *Smith v. State*, 2016 Ark. 417, at 6, 504 S.W.3d 595, 599.

[11] *Bishop v. State*, 2023 Ark. 150, at 10, 675 S.W.3d 869, 876 ("An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration.").

*Erin W. Lewis*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen., for appellee.